William A. Kershaw (State Bar No. 057486)
Stuart C. Talley (State Bar No. 180374)
Ian J. Barlow (State Bar No. 262213)
**KERSHAW, COOK & TALLEY PC**
401 Watt Avenue
Sacramento, California  95864
Telephone: (916) 779-7000
Facsimile:  (916) 721-2501
Email: bill@kctlegal.com
Email: stalley@kctlegal.com
Email: ian@kctlegal.com

Attorneys for Plaintiff and the putative Class

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ALGER as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC f/k/a CHRYSLER GROUP LLC, a Delaware Corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-00360-MCE-EFB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## NATURE OF THE CASE

1.      Plaintiff Shawn Alger ("Plaintiff") brings this proposed class action on behalf of himself and all current and former California owners and lessees of any Chrysler vehicle equipped with an Active Head Restrain system ("Class Vehicles" or "Vehicles").  The Defendant, FCA US LLC (formerly known as Chrysler Group LLC and referred to herein as "Chrysler" or "Defendant") sold and leased the Vehicles without first informing its customers that the Vehicles had a critical safety defect associated with the materials used in its Active Head Restraint

("AHR") system and that this defect poses a serious safety risk to individuals driving these Vehicles. Specifically, the AHR systems in the Class Vehicles are designed to restrain a passenger's head during a rear end collision. The system is located within the headrest and forces the headrest to quickly move forward during a rear end collision. The intent of the system is to prevent the head from whipping back during a rear end collision. Unfortunately for Plaintiff, and potentially thousands of other individuals, the headrests in the Class Vehicles are prone to abruptly deploy even when the car is not involved in a collision and while it is being operated under normal driving conditions. When this occurs, the headrest suddenly, unexpectedly, and forcefully strikes the driver in the back of the head. The force of premature deployment cannot only cause serious head injuries to drivers and passengers but also poses a significant safety risk to the public when the headrest unexpectedly deploys while the Class Vehicle is being driven under normal operating conditions on the highway. The malfunction of these AHR systems is a widespread problem. The National Highway Transportation Administration ("NHTSA") has received more than 90 complaints where the AHR system in Chrysler Vehicles has unexpectedly deployed. In 15 of these cases, the drivers reported injuries to their head, face, and neck. In 35 of the cases, the consumer was driving their vehicle when the headrest deployed and reported near collisions. No similar complaints exist for other vehicles equipped with AHR systems.

2.    Inspection of the headrests has revealed that the reason they are malfunctioning is that a critical bracket in the system is made from an inferior plastic material that is prone to cracking. When the plastic bracket fails, this causes the headrest to suddenly and unexpectedly shoot forward. There is no way to predict when the bracket will fail.

3.    At all times, Chrysler knew or should have known that its AHR system was manufactured with substandard and inappropriate materials such that it was prone to spontaneously deploy and cause potential injury. Despite this knowledge, Chrysler refuses to accept responsibility for the problem or warn consumers. In fact, Chrysler routinely blames the consumer and refuses to cover the cost of repairs, which often exceeds $800.

4.    Chrysler's conduct constitutes a breach of the implied warranty of merchantability, breach of express warranty, and violations of the California Consumer Legal Remedies Act and

the California Unfair Competition Law.  Through this action, Plaintiff seeks to 1) obtain a refund for all consumers who incurred out-of-pocket expenses associated with repairs related to the unexpected deployment of their AHR system, 2) obtain damages associated with the loss of the benefit of the bargain, and/or 3) obtain an injunction ordering Chrysler to notify Class members about this potential safety issue so that they can take appropriate actions to prevent the risk of harm and injury.

**JURISDICTION AND VENUE**

5.      The Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act ("CAFA").  Plaintiff and many other members of the putative Class are residents and citizens of states different from the countries and home states of the Defendant.  More specifically, Plaintiff and many Class members are California residents whereas Defendant is a resident of Michigan.  Plaintiff is informed and believes, and based thereon alleges, that the amount in controversy in this case, exclusive of interest and costs, exceeds $5,000,000.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 in that Plaintiff resides in this judicial district, purchased his Chrysler vehicle in this district, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.  In addition, Defendant does substantial business in this judicial district, has received substantial benefit from doing business in this judicial district, and has knowingly engaged in activities directed at consumers in this judicial district.  Furthermore, a significant number of Defendant's customers are California residents, and the wrongful acts alleged herein have affected members of the putative Class throughout California.  California has a significant contact or aggregation of contacts to the claims at issue herein in that Chrysler promotes, markets, and sells the Vehicles at issue in California.  Defendant is subject to personal jurisdiction in the State of California and in this judicial district.  This Court has jurisdiction over the Defendant identified herein because they are individuals, associations, or corporations that are either authorized to conduct or, in fact, do conduct substantial business in this district.

FIRST AMENDED CLASS ACTION COMPLAINT

**PARTIES**

7.     Plaintiff Shawn Alger is, and at all relevant times was, a citizen and resident of Antelope, California, located in Sacramento County, California.

8.     Defendant FCA US LLC is a Delaware limited liability company with its principal place of business in Auburn Hills, Michigan.   FCA US is the U.S. subsidiary of Italian multinational automaker Fiat, S.p.A.   FCA US LLC is formerly known as Chrysler Group LLC. FCA US is in the business of designing, testing, manufacturing, selling, and supporting the Vehicles that are the subject of this complaint.   FCA US does business nationwide.   For the remainder of this complaint FCA US LLC is referred to as "Chrysler" or "Defendant."

**FACTUAL ALLEGATIONS**

9.     In promotional materials and advertising, Chrysler repeatedly touts that it is dedicated to safety with respect to the design and manufacture of its Vehicles.   For example, in the brochures for Jeep Cherokees, Chrysler proclaims that these Vehicles have "over 70 available safety and security features" and that "beneath the surface of the Jeep Grand Cherokee lies a work of safety . . . systems that give you confidence behind the wheel and help protect you and your passengers."   In advertising for its Chrysler 300, Defendant asserts that these Vehicles have 80+ standard and available safety features" and are "Equipped to Protect."   The brochure for its Town and Country Vehicles states that Chrysler's "care for future generations meet your safety standards."

10.     One of the critical safety features of the Class Vehicles is the AHR system, located within the passenger and driver-side headrests.   The system is designed to help prevent or reduce injuries to the Vehicle driver and front-seat passenger in the event the Vehicle is involved in a rear end collision.   The passenger and driver-side headrests of the Class Vehicles are split into two pieces (the front and back).   The padded front of the headrest is spring loaded and is designed to rapidly extend forward to minimize the gap between the back of the Vehicle occupant's head and the headrest.   The front section of the headrest is purportedly held in place before a collision by a short metal rod situated inside a plastic bracket.   This metal rod is then "latched" into two metal hooks that are located on the back of the headrest.   The hooks are attached to a sensor.

When the Vehicle is involved in a rear end collision, the sensor triggers the hooks on the back of the headrest and then the front of the head rest (which is spring loaded) quickly moves forward. The system is designed to protect the passenger's head from whipping back during a rear end collision.

11.    Unfortunately, the AHR system in the Class Vehicles have a common critical problem with respect to the materials used to manufacture them. Specifically, the plastic bracket that restrains the metal rod on the front of the headrest—and which is subject to substantial and persistent stress and tension—is made from inferior materials and, as a result, is prone to deterioration, cracking, and/or breaking. When the plastic bracket fails, the metal restraining rod is yanked from its position causing the headrests to suddenly and unexpectedly deploy even when the Vehicle is not involved in a collision. It is impossible to know when this will happen and such incidents occur even when the Vehicle is being driven during normal operation on the highway.

12.    Despite Chrysler's performance and safety claims, as described above, the Class Vehicles present a safety hazard and are unreasonably dangerous to consumers because of the potential for an unexpected AHR deployment during normal operation when a Vehicle is not involved in a collision. As a result, the Vehicles are unsafe to drive. Worse, the activated headrest cannot be reset after it fails, further nullifying any safety benefit that the AHR system might have provided in the event of a collision after it has already injured or potentially injured the Vehicle's driver or passenger.

13.    The existence of the defect in Class Vehicles would be considered material by a reasonable consumer deciding whether to purchase or lease a Vehicle. Had Plaintiff and Class members known that the Class Vehicles contained the materials defect alleged herein, they would not have purchased or leased the Class Vehicles. As a result of Plaintiff's and Class members' reliance on Chrysler's omissions and/or material misrepresentations, Plaintiff and Class members have suffered ascertainable loss of money and/or property and/or loss in value of their Vehicles.

14.    Reasonable consumers, like Plaintiff and Class members, expect and assume that a

vehicle's headrest will not suddenly and unexpectedly deploy and strike them in the head while driving on the highway or under any other normal driving conditions.   Plaintiff and Class members would also be reasonable in assuming that Chrysler would not sell or lease vehicles with known safety defects and would disclose any defects to consumers when it learns of them. Further, Plaintiff and Class members would also be reasonable in assuming that Chrysler would not fail to disclose the defects, persistently deny the defects, and charge consumers hundreds of dollars to address the defects.

15.     The problem with the sudden and unexpected deployment of the AHR system is widespread and has potentially impacted thousands of Vehicles.   In fact, within the past three years, there have been approximately 94 complaints submitted to NHTSA concerning AHR malfunctions.   In 35 of the cases, Vehicle owners reported that they were driving their Vehicle on a highway when the incident occurred.   In 25 cases, Vehicle owners expressly noted that the malfunction was caused by the failure of the plastic bracket within the headrest.   In 15 cases, owners reported head, face, or neck injuries caused by the headrest striking the Vehicle's driver or passenger.   Many of the reports indicate that Chrysler was expressly advised of the issue yet failed to cover the cost of repair or offer any type of remedy to the consumer.   The following are examples of some of those NHTSA complaints:

- 9/2/15 - THE CONTACT OWNS A 2011 DODGE JOURNEY. THE CONTACT STATED THAT WHILE IN PARK, THE DRIVER SIDE SRS ON THE HEAD REST INADVERTENTLY DEPLOYED. AS A RESULT, THE CONTACT SUSTAINED HEAD INJURIES THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE MANUFACTURER SENT AN INSPECTOR TO INSPECT THE VEHICLE. THE FAILURE MILEAGE WAS 99,000.

- 6/8/15 - THE CONTACT OWNS A 2011 JEEP COMPASS. WHILE DRIVING APPROXIMATELY 30 MPH, THE CONTACT STATED THAT THE DRIVER SIDE HEAD REST SEPARATED. THE HEAD REST STRUCK THE CONTACT'S NECK AND HEAD, CAUSING THE CONTACT TO SUFFER A DISLOCATED NECK. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE HEAD REST PLASTIC BASE SEPARATED DUE TO DEFECTIVE PLASTIC. THE HEAD REST WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED. THE FAILURE MILEAGE WAS 74,519.

- 2/5/17 - WHILE DRIVING IN THE CITY GOING 45MPH THE PASSENGERS HEADREST RESTRAINT SYSTEM RANDOMLY EXPLODED/ACTIVATED, PUSHING MY WIFE'S NECK DRASTICALLY FORWARD.THIS INCIDENT COULD OF CAUSED SERIOUS BODILY INJURIES AS MY WIFE HAS A CERVICAL LAMINECTOMY DUE TO A SPINAL CORD TUMOR. THIS RANDOM EJECTION OF THE HEADRESTRESTRAINT COULD OF ENDED BADLY.WE TOOK THE VEHICLE TO THE DODGE DEALERSHIP WHERE THEY DETERMINED THAT THE PLASTIC LATCH THAT HOLDS THE RESTRAINT IN PLACE WAS BROKEN CAUSING THE RESTRAINT TO ACTIVATE. WE WERE TOLD THAT OUR EXTENDED WARRANTY WOULD NOT COVER THIS MANUFACTURER DEFECT (THAT'S EXACTLY WHAT IT IS, A MANUFACTURER DEFECT). WE PURCHASED THE VEHICLE WITH ONLY 10 MILES ON IT AND SINCE THE VEHICLE NOW HAS 43,000 MILES ON IT THE MANUFACTURERS WARRANTY IS EXPIRED. THIS ISSUE IS TRULY OF GREAT CONCERN AS IT COULD CAUSE SERIOUS INJURIES. I BELIEVE A RECALL SHOULD TAKE PLACE. THIS VEHICLE HAS NEVER BEEN IN ANY TYPE OF ACCIDENT NOR ANY SITUATION THAT WOULD OF CAUSED AND IMPACT TO BRAKE THIS RESTRAINT SYSTEM. I URGE FOR THIS ISSUE TO BE INVESTIGATED AS THROUGH MY RESEARCH I HAVE COME ACROSS MANY DODGE DURANGO OWNERS THAT HAVE EXPERIENCED SIMILAR ISSUES WITH THE RANDOM DEPLOYMENT OF THE HEADREST RESTRAINT SYSTEM.

- 6/24/17 - MY WIFE AND I WERE DRIVING DOWN THE ROAD WHEN THE PASSENGER SIDE ACTIVE HEADREST DEPLOYED. WHEN IT DEPLOYED IT HIT HER IN THE BACK OF THE HEAD AND GAVE HER WHIPLASH. I RESEARCHED IT ONLINE AND IT APPEARS THAT THIS IS A COMMON PROBLEM WITH DODGE VEHICLES. I ATTEMPTED TO RESET THE SPRING LOADED ACTIVE HEADREST TO DISCOVER THAT THE REASON IT HAD DEPLOYED IS BECAUSE THE PLASTIC RETAINING PIN RECEIVER WAS BROKEN. I HAVE ATTEMPTED TO CONTACT DODGE (CASE#32447405) WITH NO RESOLVE. I FEEL LIKE THE HEADREST SHOULD CERTAINLY BE RECALLED. IF AN OLDER PERSON HAD BEEN HIT IN THE HEAD OR IF IT WERE ON THE DRIVERS SIDE OF THE VEHICLE IT MAY HAVE CAUSED SERIOUS INJURY, A CRASH, OR DEATH. I CAN EMAIL PHOTOS UPON YOUR REQUEST. YOUR PURSUIT OF THIS MATTER WOULD BE GREATLY APPRECIATED.

- 3/16/17 - THE DRIVER HEAD REST DEPLOYED WHILE DRIVING ON THE HIGHWAY, STRIKING THE DRIVER IN THE BACK OF THE HEAD, CAUSING MOMENTARY LOSS OF CONTROL OF THE VEHICLE, BUT NO ACCIDENT. THE HEAD REST WILL NOT GO BACK INTO NORMAL NON-DEPLOYED POSITION AFTER FOLLOWING THE ON-LINE INSTRUCTIONS FOR RE-SETTING THE HEAD REST. AFTER CHECKING ON THE INTERNET FOR OTHER SUCH PROBLEMS OR RECALLS, FOUND THAT CHRYSLER DEALERS REFUSE TO CLASSIFY THIS AS A MANUFACTORING PROBLEM AND WILL ONLY REPAIR THIS PROBLEM AT OWNERS EXPENSE. I SAW THAT MULTIPLE OTHER OWNERS OF THE 2013 TOWN AND COUNTRY

ALSO HAD THIS PROBLEM. PLEASE INVESTIGATE THIS PROBLEM, I BOUGHT THIS VEHICLE BRAND NEW FROM A CHRYSLER DEALER.

- 8/14/17 - IN AUGUST 2017 I CAME OUT TO GET INTO THE CAR AND THE DRIVERS SIDE HEADREST . . . DEPLOYED OVERNIGHT. NEXT DAY WE WERE SITTING IN THE CAR WAITING FOR FOOD TO BE DELIVERED AND THE PASSENGER SIDE HEADREST DEPLOYED STRIKING MY DAUGHTER IN THE FACE HARD ENOUGH TO LEAVE A BRUISE. HEADREST WILL NOT RESET AND DEALERSHIP STATES THAT IT IS A MANUFACTURER DEFECT BUT WILL NOT REPLACE THEM. VEHICLE WAS AT 80000 MILES AT THE TIME SO NO LONGER UNDER FULL WARRANTY, BUT THE MANUFACTURER SHOULD HAVE TO REPLACE FAULTY SAFETY EQUIPMENT REGARDLESS.

- 10/16/17 - I WAS PARKED IN MY DRIVEWAY (AS I JUST GOT HOME FROM WORK) TALKING TO MY DAUGHTER AND HER FATHER (WHO WERE PARKED TO MY DRIVERS SIDE GETTING READY TO LEAVE IN ANOTHER VEHICLE) WHEN WE ALL HEARD A LOUD NOISE AND SOMETHING HIT THE SIDE OF MY HEAD VERY HARD. THE ACTIVATED HEAD REST SHOT OPEN FOR NO REASON AT ALL. THE CAR WAS IN PARK AND NOBODY WAS IN THE VEHICLE EXCEPT FOR ME.  THERE WAS NO IMPACT OR ANYONE TOUCHING THE OUTSIDE OF THE VEHICLE EITHER. I AM FORTUNATE THAT I WAS NOT DRIVING AT THE TIME THIS HAPPENED AS THIS COULD HAVE CAUSED AN ACCIDENT WITH THE IMPACT OF THE HEADREST HITTING MY HEAD.

- 5/13/17 - PASSENGER SIDE FRONT ACTIVE HEADREST DEPLOYED ON ITS OWN, (NO COLLISION, OR IMPACT) WHILE AT A COMPLETE STOP AT A TRAFFIC LIGHT, SOUNDED LIKE A GUN SHOT, ADULT PASSENGER IS SUFFERING WITH WHIPLASH, AND TERRIFIED TO RIDE IN MY JEEP AGAIN.

- 8/24/17 - MY WIFE WAS DRIVING THE VEHICLE WHEN THERE WAS AN EXPLODING SOUND IMMEDIATELY FOLLOWED BY HIT TO THE BACK OF HER HEAD. SHE IS CURRENTLY IN A LOT OF PAIN FROM HER NECK AND HAS A NICE HEADACHE TO ACCOMPANY IT. THE VEHICLE WAS IN MOTION WHEN THE HEADREST DEPLOYED ON IT OWN.

- 3/6/17 - THE ACTIVE HEAD RESTRAINT (HEADREST) OF MY JEEP DEPLOYED WHILE DRIVING DOWN THE HIGHWAY CAUSING ME TO SWERVE INTO THE OTHER LANE. LUCKILY, THERE WEREN'T ANY CARS IMMEDIATELY AROUND ME SO I WAS ABLE TO REGAIN CONTROL AND CONTINUE ON WITHOUT INJURY. I BELIEVE THIS COULD BE A VERY DANGEROUS DEFECT IN OTHER SITUATIONS. THE ACTIVE HEAD RESTRAINT IS INTENDED TO GO OFF IN A COLLISION TO PREVENT WHIPLASH FROM AIRBAG DEPLOYMENT AS FAR AS I UNDERSTAND. MY VEHICLE WAS NOT IN AN ACCIDENT OR TOUCHED IN ANY WAY, SIMPLY TRAVELING STRAIGHT DOWN THE HIGHWAY. THIS WAS CONFIRMED BY

AN INSPECTION AT THE LOCAL JEEP DEALERSHIP.

- 7/26/17 - ON 7/26/17 I WAS DRIVING ON A LOCAL ROAD IN EASTCHESTER NY GOING UNDER 25 MPH WHEN THE HEADREST RESTRAINT DEPLOYED AND INJURED THE BACK OF MY HEAD. WENT TO ER AND NEED TO SEE A SPECIALIST FOR INJURY. CONTACTED DODGE/CHRYSLER AND WAS TREATED LIKE I WAS AT FAULT. LEASE DEALER STEPPED IN AND VERIFIED THERE WAS NO COLLISON. DODGE HAS AN ENGINEER SCHEDULED TO INSPECT IT 7/31/17. WAS TOLD TO GO THROUGH MY INSURANCE FOR INJURIES BUT THERE WAS NO COLLISION!!

- 9/28/17 - WHILE DRIVING ON THE HIGHWAY SOMETHING EXPLODED LOUD INSIDE THE CAR. I SCREAMED AND AT THE FRONT PASSENGER'S SEAT, I SAW MY DAUGHTERS HEAD AND BODY MOVING FORWARD AS SHE WAS IMPACTED BY THE SEAT. THEN I NOTICED THAT THE HEADREST POPPED AND HIT MY DAUGHTER STRONGLY IN THE HEAD. I WENT RIGHT AWAY TO BIG O DODGE 2645 LAURENS RD, GREENVILLE, SC 29607. THE TECHNICIAN LOOKED AT THE HEADREST AND TOLD ME TO MAKE AN APPOINTMENT BECAUSE THEY WERE TOO BUSY. THEY GAVE ME AN APPOINTMENT FOR A WEEK LATER AND ALSO TOLD ME TO CALL CHRYSLER 800-992-1997 TO SEE IF THEY COVER THE PART. I TALKED TO ARIANA GONZALEZ 9:45AM AND SHE SAID SHE WAS GOING TO CALL BIG O DODGE TO VERIFY WHAT CAN BE DONE, BUT SHE NEVER CALLED ME BACK. I CALLED AGAIN CHRYSLER AND TALKED TO JOEL AND HE SAID THEY CAN'T DO ANYTHING ABOUT IT UNTIL THE CAR IS DIAGNOSED. I EMPHASIZED THAT THIS IS REALLY DANGEROUS AND THAT I AM AFRAID THAT THIS HAPPENS TO MY DRIVER'S SEAT WHILE I AM DRIVING. THIS IS A GREAT SAFETY HAZARD. IF THIS EXPLODES IN THE DRIVER'S SEAT WHILE DRIVING IT CAN CAUSE AN ACCIDENT. THIS IS MY DAILY USE VEHICLE AND I NEED THIS TO BE SOLVED RIGHT AWAY, AND PREVENT MANY OTHER PEOPLE USING DOGDE FROM BEING HARMED.

- 7/7/17 - I WAS DRIVING ON THE HIGHWAY AND SUDDENLY I WAS HIT IN THE BACK OF THE HEAD. AT FIRST I THOUGHT I WAS HIT BY ANOTHER CAR BUT I LOOKED AROUND AND THERE WAS NO CARS AROUND. I PULLED OVER AND LOOKED AT MY HEADREST AND IT EXPLODED AND HIT ME IN THE HEAD. I CALLED AND BROUGHT MY CAR IN TO JEEP WHO SAID IT WAS THE ACTIVE HEAD RESTRAINT AND IT IS SET TO GO OFF DURING AN ACCIDENT. I TOLD THEM I WAS NOT IN ANY ACCIDENT. I THEN CALLED JEEP DIRECTLY WHO TOLD ME THEY WOULD INVESTIGATE THE ISSUE AND THAT I SHOULD LEAVE MY CAR AT JEEP. THAT WAS 3 WEEK AGO. ALL OF MY ATTEMPT TO CONTACT JEEP TO HAVE THEM RECTIFY THE ISSUE AND REPLACE MY HEADREST HAVE GONE NO WHERE. I HAVE NOT RECEIVED ANY CALL BACKS AND EVERY TIME I CALL THEM THEY TELL ME THERE IS NOTHING THEY CAN DO EXCEPT WAIT UNTIL I AM CONTACTED BY JEEP. THIS IS A BIG SAFETY ISSUE AS I COULD HAVE RUN OFF THE ROAD AN[D] CRASHED.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 1/27/18 - I WAS COMING TO A GRADUAL STOP AT A TRAFFIC LIGHT ON A LOCAL ROAD WHEN THE ACTIVE HEAD RESTRAINT SEEMINGLY DEPLOYED. I WAS NOT IN A COLLISION AND THERE WAS NO REASON FOR IT TO DEPLOY. UPON EXAMINING THE MECHANISM IT WAS NOT TRIGGERED, RATHER IT FAILED BECAUSE THE PLASTIC CLIPS THAT HELD ONTO THE LATCH HAD BROKEN OFF INTERNALLY CAUSING THE HEADREST TO HIT ME VIOLENTLY IN THE BACK OF THE HEAD. THIS COULD HAVE BEEN FAR WORSE HAD I NOT BEEN ALMOST AT A COMPLETE STOP.

- 1/21/18 - DRIVER'S HEADREST DEPLOYED DUE TO THE PLASTIC THAT HOLDS A PIN BROKE INTERNALLY. THIS SPRING LOADED SYSTEM APPARENTLY HAD ENOUGH TENSION THAT IT BROKE THE PLASTIC. MY VEHICLE WAS STATIONARY AND UNOCCUPIED AT THE TIME. IF I HAD BEEN SITTING IN THE VEHICLE MY NECK COULD HAVE BEEN BROKEN. A REPLACEMENT HEADREST IS ABOUT $650, NOT INCLUDING LABOR, ACCORDING TO THE DEALERSHIP AND I WAS TOLD IT IS NOT IN WARRANTY. I HAVE HAD THIS VEHICLE LESS THAN 4YRS.

- 7/1/17 - THE PASSENGER SIDE SAFETY HEADREST DEPLOYED WHILE DRIVING FULL SPEED DOWN THE INTERSTATE. APPROX. 75 MPH. THE SOUND WAS SO SUDDEN IT STARTLED ME AND ALMOST CAUSED ME TO WRECK. NOW THE HEADREST WILL NOT "POP" BACK INTO POSITION AS DOCUMENTED BY DODGE LEAVING THE HEADREST FULLY DEPLOYED AND COMPLETELY USELESS.

- 11/8/17 - THE ACTIVE HEAD RESTRAINT SYSTEM SUDDENLY DEPLOYED WHILE DRIVING NORMALLY ON CITY STREETS, AND WAS NOT INVOLVED IN A COLLISION OF ANY KIND. PLASTIC RETAINING CLIPS NOW VISIBLE INSIDE THE HEADREST APPEAR TO HAVE FAILED, PREVENTING RESETTING.

- 10/31/17 - THE ACTIVE HEAD REST FOR MY 2014 JEEP GRAND CHEROKEE HAD SPONTANEOUSLY DEPLOYED WHILE PARKED IN MY GARAGE. I HAD TAKEN IT TO THE DEALER FOR REPAIR AND I WAS TOLD THE PLASTIC CLIPS WERE BROKEN AND IT COULDN'T BE RESET AND THE HEAD REST NEEDED TO BE REPLACED AT MY EXPENSE. APPARENTLY THIS IS NOT A VEHICLE RECALL ISSUE BUT POSSIBLY SHOULD BE LOOKED INTO AS ONE. I HAVE FOLLOWED UP THIS TYPE OF ISSUE ON THE INTERNET AND FOUND MULTIPLE CASES WITH SIMILAR OR THE EXACT TYPE OF ISSUE. THIS POSES A HUGE SAFETY HAZARD, IF I HAD BEEN DRIVING, AND THE HEADREST DEPLOYED IN THIS MANNER IT COULD HAVE CAUSED A SERIOUS ACCIDENT.

- 8/1/17 - ACTIVE HEADREST ACTIVATED BY ITSELF WITH NO COLLISION. INSPECTION REVEALED A PLASTIC TAB IS BROKEN. THIS IS KNOWN BY JEEP AS A DEFECTIVE PIECE OF EQUIPMENT. THEY REFUSED TO FIX AS

THE CAR IS ~1500MILES OUTSIDE OF WARRANTY.

- 5/1/17 - THE VEHICLE WAS STATIONARY AND PARKED, BUT STILL RUNNING. THE FRONT PASSENGER SEAT WAS UNOCCUPIED AND THERE WAS A LOUD POPPING SOUND AS THE FRONT PASSENGER SEAT HEADREST "EXPLODED." A COUPLE OF PLASTIC PIECES FLEW OUT. THERE WAS NO REASON FOR THE HEADREST TO DEPLOY. I TOOK THE CAR TO THE JEEP DEALER AND THEY SAID THE HEADREST WAS "DEFECTIVE" BUT COULDN'T DO ANYTHING ABOUT IT AS THE CAR WAS NO LONGER UNDER WARRANTY, NOR IS THERE A RECALL FOR THE PROBLEM. THE CAR HAD UNDER 50K MILES ON IT AND WAS UNDER TWO YEARS OLD, AND HAD NEVER BEEN IN AN ACCIDENT.

- 9/9/17 - DRIVING ON HIGHWAY CAR IN MOTION WHEN PASSENGER HEADREST DEPLOYED HITTING PASSENGERS HEAD PUSHING THEM INTO DASHBOARD. TAKEN TO ADDYS DODGE AND WAS TOLD IT WAS BROKE AND NEEDED A NEW HEADREST FOR $790.00 THAT HEADREST WAS NOT UNDER WARRANTY AND ASKED FOR $ 98.00 FOR THE[IR] INSPECTION.

- 9/27/17 - I WAS WONDERING IF A SAFETY DEVICE IN A CAR HEADREST, DESIGNED TO JUMP FORWARD IN A REAR END COLLISION, IS A SAFETY DEVICE THAT FALLS UNDER WARRANTY. MY WIFE HAD ONE THAT MALFUNCTIONED IN HER 2014 CHRYSLER 200. THERE WAS NO REAR END COLLISION. SHE STOPPED AT AN INTERSECTION IN A MALL PARKING LOT. THE HEADREST DEPLOYED, THROWING HER FORWARD INTO THE STEERING WHEEL. CHRYSLER IS SAYING THAT SINCE HER CAR IS NO LONGER UNDER WARRANTY SHE WILL HAVE TO PAY FOR THE REPLACEMENT OF THIS FAULTY PART. MODELS UP TO 2013 WERE RECALLED FOR THE SAME . . . IN THE HEADRESTS, BUT 2014 WERE NOT RECALLED.

- 9/8/17 - AFTER MAKING A LEFT TURN AT AN INTERSECTION, THE PASSENGER SIDE ACTIVE HEADREST DEPLOYED. NO OTHER SAFETY SYSTEMS ACTIVATED, AND NO WARNING LIGHTS APPEARED ON THE DASH. THE DRIVER-SIDE HEADREST DID NOT DEPLOY. SPEED WAS LESS THAN 30 MPH. LOOKING AT THE HEADREST, IT APPEARS THAT THE PLASTIC CLIPS THAT HOLD IT IN PLACE FAILED, CAUSING THE DEPLOYMENT. SEE THE ATTACHED PHOTOGRAPHS. THE VEHICLE HAD 38,402 MILES AT THE TIME OF THE INCIDENT.

- 6/20/17 - MY DRIVER SIDE HEADREST DEPLOYED ON ITS OWN WHILE DRIVING DOWN THE ROAD. THE VEHICLE HAS NEVER BEEN IN AN ACCIDENT AND IT IS ONLY 3 YEARS OLD. THE DEPLOYMENT ALMOST CAUSED ME TO WRECK BUT I WAS ABLE TO MAINTAIN MY VEHICLE TO COME TO A STOP IN THE OTHER LANE. I HAVE CONTACTED THE DEALER AND DODGE WITH NO HELP. THE[IR] EQUIPMENT MALFUNCTION AND I HAVE TO PAY $684 TO HAVE IT REPAIRED. KEEP IN MIND IT IS SUPPOSE

TO DEPLOY IN A REAR END COLLISION AND THERE WAS NO COLLISION. IT WAS A SPONTANEOUS DEPLOYMENT.

- 5/21/17 - 2015 GRAND CARAVAN MY WIFE MICHELLE O'CONNELL DRIVE IN PULLING INTO OUR DRIVEWAY AND THE HEADREST RESTRAINT SYSTEM AIRBAG DEPLOYED STRIKING MY WIFE IN THE BACK OF THE HEAD VAN WAS TOWED TO BLACK CHRYSLER DODGE RAM IN STATESVILLE NORTH CAROLINA TO BE REPAIRED MY WIFE SOUGHT MEDICAL ATTENTION CHRYSLER THEN DEMANDED THE VEHICLE BE INSPECTED BY AN INDEPENDENT INSPECTOR TO SEE IF IT WAS IN AN ACCIDENT AFTER THE REPORT WAS DONE IN RECEIVED CHRYSLER NOTIFY THE DEALER DO NOT TOUCH THE VEHICLE THE REPORT SAID THE VEHICLE WAS FLAWLESS WHICH WE KNEW THAT THEN CHRYSLER'S LAWYER CONTACTED US AND SAID WE ARE NOT FIXING YOUR VEHICLE UNTIL YOU SIGN PAPERWORK ABSOLVING US OF ANY LIABILITY WHICH THEY KNOW THEY'RE LIABLE CUZ THE VAN IS IN PERFECT CONDITION WE ARE REPORTING THIS BECAUSE WE BELIEVE THERE IS A KNOWN DEFECT BY CHRYSLER AND THEY'RE TRYING TO SWEEP IT UNDER THE RUG THEY HAD A SIMILAR INCIDENT WHERE THEY HAD TO RECALL 880000 VEHICLES IN 2013 FOR THE EXACT SAME ISSUE CHRYSLER MADE OF DIRECT THREAT SAYING WE'RE NOT GOING TO FIX YOUR VEHICLE AND LEAVE IT ON REGISTERABLE BECAUSE OF THE AIRBAG FOR INSPECTION AND UNUSABLE UNLESS YOU ABSOLVE US OF LIABILITY THE VEHICLE WAS ONLY TRAVELING LESS THAN 2 MILES AN HOUR PULLING INTO OUR DRIVEWAY IT WAS A DRIVER'S SIDE HEADREST RESTRAINT AT DEPLOYED.

- 5/2/17 - THE ACTIVE HEADREST/HEAD RESTRAINT DEPLOYED WHILE DRIVING, HITTING MY WIFE IN THE BACK OF THE HEAD. SHE WAS TRAVELING APPROXIMATELY 30-35MPH. THIS CAUGHT HER OFF GUARD BUT FORTUNATELY DID NOT AFFECT HER DRIVING AND SHE MAINTAINED CONTROL OF THE VEHICLE. THE VEHICLE WAS NOT INVOLVED IN AN ACCIDENT. AFTER INSPECTING THE HEAD RESTRAINT I NOTICED THE PLASTIC THAT APPARENTLY HOLDS A METAL ROD BROKE ALLOWING THE HEAD RESTRAINT TO DEPLOY. IN RESEARCHING THE ACTIVE HEAD RESTRAINT ISSUES, I RAN ACROSS A RECALL FOR CHRYLSER BUT IT DID NOT PERTAIN TO MY MAKE AND MODEL AND IT WAS FOR POSSIBLE NON DEPLOYMENT DURING REAR END COLLISION. SAFETY RECALL N38 /NHTSA 13V-282 ACTIVE HEAD RESTRAINTS

- 4/27/17 - THURSDAY EVENING MY HUSBAND WAS BACKING OUT OF OUR GARAGE AT OUR HOUSE. WHEN HE GOT TO THE STREET (A RESIDENTIAL ROAD) HE PUT THE CAR INTO DRIVE AND THAT'S WHEN THE DRIVER'S HEADREST DEPLOYED (SEPARATED FROM THE PLASTIC PIECE LIKE AN AIRBAG, HEADREST RESTRAINT ACTIVATION THING) HITTING MY HUSBAND IN THE BACK OF THE HEAD FORCEFULLY. HE DID NOT HIT ANYTHING OR RUN OVER ANYTHING WHILE BACKING OUT. NO OTHER AIRBAG DEPLOYED IN THE CAR, JUST THAT ONE. HE

PULLED BACK INTO THE GARAGE AND TOLD ME WHAT HAPPENED. WE GOT ON CHRYSLER'S MOPAR WEBSITE TO SEE IF THERE WERE ANY RECALLS REGARDING THAT PART. THERE WERE NO CURRENT RECALLS ON OUR VEHICLE AND WE WERE UP-TO-DATE WITH ALL THE RECALLS ON OUR VEHICLE. WE CONTACTED CHRYSLER SEVERAL TIMES AND GOT NOWHERE WITH THEM, BUT THE FIRST REPRESENTATIVE WE TALKED TO DID GIVE US A CASE NUMBER. THEY ARE BASICALLY SAYING IT IS OUT OF THEIR HANDS AND IN THE DEALERSHIPS. WE THEN CONTACTED THE DEALERSHIP WHERE WE PURCHASED AND SERVICE OUR JEEP. THEY TOLD US TO HAVE IT TOWED THERE AND THEY WILL INSPECT THE PROBLEM. EVEN IF THEY FIX THE PART OR RESET THE AIRBAG THING, I AM STILL SCARED TO DRIVE MY CAR TO AND FROM WORK AND TRANSPORT MY CHILD.

- 9/26/16 - ON SEPTEMBER 26 2016, THE DRIVER'S SIDE HEADREST EXPLODED AND CAME LOSE (FOR NO APPARENT REASON). EXPERIENCING HEADACHE DUE TO THE BUMP ON MY HEAD. DESPITE THE VEHICLE BEING ONLY THREE YEARS OLD, AND WITH JUST 56000 MILES, THE RADIATOR AND AIR CONDITIONING SYSTEMS HAVE BEEN REPLACED! 2013 DODGE AVENGER IS NOT A SAFE CAR TO DRIVE AND NEEDS TO BE THOROUGHLY INVESTIGATED FOR QUALITY AND SAFETY. THE HEADREST EXPLOSION HAPPENED WHILE THE ENGINE WAS OFF AND WAS ABOUT TO EXIT THE VEHICLE INSIDE MY GARAGE.

- 7/31/16 - ON 7/31/2016 MY VEHICLE WAS PARKED IN A DRIVEWAY. I ENTERED THE VEHICLE, STARTED THE ENGINE AND THE DRIVER SIDE ACTIVE HEADREST DEPLOYED. ATTEMPTS TO RESET HEADREST PER THE OPERATORS MANUAL FAILED. ON 8/4/2016 I TOOK THE VEHICLE TO THE DEALERSHIP WHO INFORMED ME THAT THEY COULD NOT RESET HEADREST AND IT HAD TO BE REPLACED (COST APPROX $900). I CONTACTED DODGE CUSTOMER SERVICE WHO HAS ASSIGNED AN INVESTIGATOR TO LOOK INTO THE ISSUE. CASE # 29846962 AS OF THIS DATE, 8/5, THE REPLACEMENT HEADREST IS ON ORDER AND I AM WAITING TO BE CONTACTED BY THE INVESTIGATOR TO LOOK AT THE VEHICLE. PRIOR TO THE INCIDENT, THE VEHICLE HAD BEEN DRIVEN IN EXCESS OF 500 MILES (NORTHERN VA TO TN) AND HAD BEEN PARKED AND SECURED IN THE DRIVEWAY FOR APPROX. 1 HOUR. THE VEHICLE WAS NOT, AND HAS NEVER BEEN, IN AN ACCIDENT.

- 8/19/17 - THE PASSENGER SEAT HEAD RESTRAINT SYSTEM ACTIVATED FOR NO KNOWN REASON WHILE DRIVING 70 MPH ON THE INTERSTATE. THE VEHICLE WAS NOT IN ANY ACCIDENT OR NO FACTORS CAUSED THIS. THE HEAD REST VIOLENTLY SHOT FORWARD APPROX 6" IF THIS WOULD HAVE BEEN THE DRIVERS SEAT IT WOULD ALMOST CERTAINLY CAUSED THE DRIVER TO LO[ ]SE CONTROL OF THE JEEP.

- 6/7/17 - WHILE IN PARK, DRIVER WAS LEANING FORWARD TO REACH SOMETHING ON FLOOR WHEN HEAD REST SHOT FORWARD. INSPECTION

-13-

REVEALED PLASTIC RETAINER HAD BROKEN ALLOWING THE ACTIVE HEAD RESTRAINT TO RELEASE. SAFETY CONCERN IS WHAT IF THIS HAD HAPPENED WHILE DRIVING WITH HEAD NEAR THE HEAD REST?

16.     The Vehicles reporting deployment malfunctions in the NHTSA database include the following Chrysler vehicles:

- Dodge Journey

- Jeep Grand Cherokee

- Jeep Wrangler

- Jeep Liberty

- Jeep Patriot

- Jeep Compass

- Dodge Caravan

- Dodge Grand Caravan

- Dodge Avenger

- Dodge Durango

- Chrysler 200

- Chrysler Town and Country

17.     Despite the obvious defect in the affected Vehicles and Defendant's knowledge of the issue, it continues to use substandard or inadequate plastic material in its AHR system without addressing the problem or disclosing it to their customers.

**A.     Chrysler's Warranty**

18.     Chrysler's Basic Warranty covers "the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

19.     As indicated herein, the plastic used in Chrysler's AHR system is "defective in material" and this defect was present at the time the Class Vehicles "left the manufacturing plant." Despite this, Plaintiff and Class Members were denied coverage for repairs. Rather, Chrysler takes the position that its warranty does not cover the repair or replacement of the AHR system. According to Chrysler, the costs for those repairs should be borne entirely by its

-14-

customers.

**B.    Chrysler Conceals the Safety Defect From Its Customers**

20.    At all material times, the potential harm caused by the defective material used in Chrysler's AHR system was widely known to the Defendant.  The Defendant had superior and exclusive knowledge of the materials defect and knew or should have known that the defect was not known or reasonably discoverable by Plaintiff and Class members before they purchased or leased the Class Vehicles.

21.    Plaintiff is informed and believes and based thereon alleges that Defendant acquired its knowledge of the materials defect prior to the time Plaintiff and Class member's purchase or leased the Class Vehicles, including through the numerous consumer complaints and the NHTSA complaints referenced above.  In addition, Defendant knew of this materials defect in Vehicles from repair orders and warranty claims from or to Chrysler dealerships.  Nevertheless, Defendant actively concealed and failed to disclose and continues to fail to disclose this defect to Plaintiff and the putative Class members at the time of purchase or lease and thereafter.

22.    Chrysler intentionally misrepresented, either affirmatively or by omission, that its Vehicles were free from defects and took no action to adequately warn or remedy the defect, but instead concealed, suppressed, and failed to disclose the potential damage that could be caused by such materials defects.

23.    In fact, Chrysler systematically, purposefully, and fraudulently concealed the defect and misled customers by telling them that any problems in connection with the defect were actually caused by customers' failure to maintain their Vehicles properly and/or by "tampering."

24.    Despite its awareness and actual knowledge of the materials defect referenced herein and the attendant problems evidenced by, among other things, a significant number of customer complaints, repair orders and warranty claims, Chrysler continues to fail to warn, or even mention, anything about the issue.

25.    Chrysler knew that the defective material in Class Vehicles was causing substantial problems for the putative Class members.  However, upon information and belief, Chrysler has systematically refused to pay for required repairs to putative Class members'

-15-

Vehicles caused by the materials defect described herein.

26.     While the damages are caused by defective materials in Class Vehicles and while numerous customers have requested that Chrysler remedy and/or address the defects, Chrysler and its agents have failed and/or refused to do so.

27.     To date, Chrysler has failed to warn or inform its customers of the known materials defect and has actively concealed it from Plaintiff and other Class members.

28.     Despite Chrysler's notice of the defect from numerous consumer complaints, dealership repair orders, NHTSA complaints, warranty claims, and other sources, it has not recalled the Class Vehicles to address the defect, has not offered all of its customers suitable repair, remedial measures, modifications, or replacements free of charge, and has not offered to reimburse the Class members who incurred costs relating to the materials defect and subsequent damage to the Class Vehicles.  As a result of Chrysler's conduct alleged herein, Plaintiff and Class members have been harmed and have suffered actual damages as referenced herein.

**C.     The Experience of Plaintiff**

29.     On or about July 5, 2015, Plaintiff purchased a new 2015 Jeep Grand Cherokee. The Vehicle was purchased and used for personal, non-commercial purposes. Before acquiring the Vehicle, Plaintiff reviewed and relied on Chrysler's various marketing and advertising materials, including material on Chrysler's official website concerning the Vehicle's safety features.

30.     On or about August 10, 2017, Plaintiff was driving to work in his Vehicle when the Vehicle's AHR system deployed suddenly and unexpectedly.  Although the headrest forcefully struck Plaintiff in the back of the head, he was able to maneuver his Vehicle to a stop in or at the side of the road.  At the time of the deployment, Plaintiff was traveling at approximately 30 miles per hour in a normal fashion and was not involved in a collision of any kind.  No other safety equipment in the Vehicle, including the AHR system on the passenger side, deployed during the incident.

31.     Later that day, Plaintiff returned home and was experiencing severe headaches. He was eventually diagnosed by his doctor with a concussion and was forced to miss three days

of work.

32.     Thereafter, Plaintiff attempted to reset the AHR system so that he could drive his Vehicle normally.  When he was unable to reset the system, he brought the Vehicle to his local dealership for repair.  Thereafter, Plaintiff learned that the pin that is used to latch the front of the headrest had been torn out of its plastic bracket which had failed.

33.     At the time of the incident, Plaintiff's Vehicle was under warranty and had only been driven for 23,547 miles.  Despite this, Plaintiff was told that the exploding headrest was an unusual problem and that it must have deployed because Plaintiff supposedly "tampered" with it. Despite Plaintiff advising the dealer that he never tampered with the headrest, it refused to cover the cost of repair under the warranty.  As a result, Plaintiff paid $877 for a new headrest. However, Plaintiff is informed and believes that the AHR system in the new headrest installed in his Vehicle is made from the same defective materials used in the headrest that malfunctioned and poses the same safety risks.  Plaintiff is also concerned that the passenger side headrest, which has not yet malfunctioned, also possesses a similar safety hazard for his passengers.

34.     Had Plaintiff known that his Vehicle was equipped with an AHR system that was manufactured with defective plastic materials and was unsafe to drive, he would not have purchased the Vehicle and/or would have paid significantly less for it.

## TOLLING OF THE STATUTE OF LIMITATIONS

35.     Since the materials defect in the Class Vehicles cannot be detected until the defect manifests, Plaintiff and the Class members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite the exercise of due diligence.

36.     Plaintiff and the Class members had no realistic ability to discern the Class Vehicles' materials defect until after the AHR system deployed.  In addition, despite their due diligence, Plaintiff and the Class members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the AHR system was concealed from them until after the manifestation of the failure.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the Class members.

37.     Moreover, Chrysler is under a continuous duty to disclose to the Plaintiff and the

-17-

Class members the true character, quality, and nature of the Class Vehicles and the existence of any safety defects.   Chrysler knowingly, affirmatively, and/or actively concealed the true character, quality, and nature of the defect at issue.  Furthermore, Plaintiff reasonably relied upon Chrysler's knowing, affirmative, and/or active concealment.  Based on the foregoing, Chrysler is estopped from relying on any statutes of limitation in defense of this action.

38.     The causes of action alleged herein did or will accrue only upon discovery of the defects referenced herein, Chrysler refusal to cover the repairs of the Class Vehicles, and Chrysler's fraudulent concealment of the defects.  Plaintiff and Class members did not discover and could not have discovered through the exercise of reasonable diligence the true nature of the defects.

## **CLASS ACTION ALLEGATIONS**

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3) against Defendant on behalf of himself and the following Class and Breach of Warranty Subclass (collectively, the "Class") defined below.

40.     Plaintiff brings this class action on behalf of himself and the following proposed Class:

> All persons in California who currently own or lease, or who have owned or leased, any vehicle manufactured by Chrysler or any of its subsidiaries or affiliates that is equipped with an AHR system.

41.     Plaintiff also brings this class action on behalf of the following proposed Subclass:

> All persons in California who currently own or lease, or who have owned or leased, any vehicle manufactured by Chrysler or any of  its subsidiaries or affiliates that is equipped with an AHR system and/or who submitted their Vehicle for repairs under the Vehicle's warranty for damage related to the malfunction of the AHR system and/or incurred out-of-pocket expenses for such repairs after Chrysler's refusal to cover repairs under the Vehicle's warranty.

42.     Subject to additional information through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the Class are Defendant, as well as Defendant's employees, affiliates, officers, and directors, including franchised dealers, any claims for physical

-18-

injuries related to the defect at issue in this litigation, and the Judge to whom this case is ultimately assigned.   Also specifically excluded from the proposed Class and Subclass are business entities for purposes of Plaintiff's claims for relief under the California Consumers Legal Remedies Act, Civil Code section 1750, *et seq.* ("CLRA").

43.   Numerosity:   Though the exact number and identity of Class members is not presently known, they can be identified in Chrysler's records through coordinated discovery pursuant to this class action.   Plaintiff believes that hundreds of thousands of Class Vehicles equipped with AHR systems have been sold or leased in California.

44.   Commonality and Predominance:   Common questions of fact and law predominate over any questions affecting only individual members of the Class.   The predominating common or class-wide questions of fact include the following:

    a.   Whether the materials used to manufacture the AHR systems are defective;

    b.   Whether the Class Vehicles owners' manuals, written care and maintenance materials, and product labeling sufficiently warn customers about the dangers associated with the Class Vehicles;

    c.   Whether the AHR system defect constitutes a safety risk;

    d.   Whether Chrysler knowingly failed to disclose and warn consumers of the materials defect with the intent that consumers rely upon such concealment, suppression or omission;

    e.   Whether Chrysler had a duty to disclose to consumers material facts concerning the serious problems that would inevitably result from the Vehicles' materials defect;

    f.   Whether Chrysler's conduct as alleged herein constitutes a violation of the California Consumers Legal Remedies Act and the California Unfair Competition Law;

    g.   Whether Chrysler's refusal to repair Vehicles that have suffered damage constitutes a breach of express warranty; and

h.  Whether Chrysler's sale of the defective Class Vehicles constitutes a breach of the implied warranty of merchantability.

45.  <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class members, as all Class members were and are similarly affected by Chrysler's wrongful conduct complained of herein.  Plaintiff and each of the Class members leased and/or owned a Class Vehicle equipped with an AHR system that was manufactured with defective materials such that it causes the Vehicles to be unsafe to drive.

46.  <u>Adequacy</u>:  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent.  Plaintiff has retained counsel highly experienced in the prosecution of complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of all members of the Class.

47.  <u>Superiority</u>:  A class action is superior to all other available methods for the fair and efficient adjudication of the rights of each Class member.  Joinder of individual Class members is impracticable.  Individual litigation would be unnecessarily costly and burdensome and would deter individual claims.  To process individual cases would increase both the expenses and the delay not only to Class members, but also to Defendant and the Court.  In contrast, a class action in this matter will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each class member, all by way of the comprehensive and efficient supervision of the litigation by a single court.

48.  This Class may be certified because:

a.  The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the proposed Class that would establish incompatible standards of conduct for Defendant;

b.  The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter,

-20-

be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

   c.  Defendant has acted or refused to act on grounds generally applicable to the Class members, thereby making appropriate final and injunctive relief with respect to Class members as a whole.

## FIRST CAUSE OF ACTION
**(For Violations of the Consumers Legal Remedies Act, Cal. Civ. Code section 1750, *et seq.*)**

49.    Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

50.    Defendant is a "person" within the meaning of Civil Code sections 1761(c) and 1770.

51.    Defendant sells "goods" within the meaning of Civil Code sections 1761(a) and 1770.

52.    Plaintiff and the Class are consumers within the meaning of Civil Code section 1761(d).

53.    Plaintiff's purchase of a Jeep Grand Cherokee equipped with a materials defect in the AHR system constitutes a transaction within the meaning of Civil Code sections 1761(3) and 1770.

54.    Defendant's conduct violated and continues to violate the CLRA in at least the following respects:

   a.  In violation of section 1770(a)(5) of the CLRA, Chrysler represented that goods (i.e., its Vehicles) have characteristics or benefits which they do not have.

   b.  In violation of section 1770(a)(7) of the CLRA, Chrysler represented that goods are of a particular standard, quality, or grade when they are of another; and

   c.  In violation of section 1770(a)(9) of the CLRA, Chrysler advertised goods with

-21-

the intent not to sell them as advertised.

55.     Defendant had knowledge of the defects as described herein.

56.     Defendant engaged in these unfair or deceptive acts and practices with the intent that they result, and which did result, in the sale of the subject Vehicles to Plaintiff and the Class.

57.     By engaging in unfair or deceptive conduct in violation of the CLRA, Defendant actively concealed and failed to disclose material facts about the true characteristics of the transaction leading to Plaintiff's and Class members' purchase of the subject Vehicles, despite having knowledge of the defects described herein before the Plaintiff and Class Members purchased or leased the Class Vehicles.

58.     The fact that consumers were entering into a sale for a Vehicle that was unsafe to drive and poses a safety risk to Plaintiff and the general public is a material fact in that a reasonable person would have considered that an important factor in deciding whether to complete the transaction for the subject Vehicle.  Plaintiff would not have purchased the subject Vehicle had he known of that fact.

59.     As a direct and proximate result of Defendant's violations of law, Plaintiff and Class members have been injured.

60.     Plaintiff seeks an order enjoining the unlawful practices described herein and an Order requiring Defendant to notify the Class members of its violations of the CLRA and the remedy it will provide to them.

### SECOND CLAIM FOR RELIEF
**(For Violations of Cal. Bus. & Prof. Code sections 17200, *et seq*.)**

61.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

62.     Defendant's practices as alleged in this Complaint constitutes unlawful, unfair, and fraudulent practices under the Unfair Competition Law, Business and Professions Code section 17200, *et seq*. ("UCL").

63.     Defendant committed unlawful acts and practices by, among other things, engaging in conduct, as alleged herein, that violates the CLRA, California Civil Code section

1750, *et seq.*

64.     Defendant committed unfair business practices by:

    a.  Engaging in conduct, as alleged herein, where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and other Class members;

    b.  Engaging in conduct, as alleged herein, that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the other Class members; and

    c.  Engaging in conduct, as alleged herein, that undermines or violates the stated policies underlying the CLRA, California Civil Code section 1750, *et seq.*, which seeks to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace, and thus provide a sufficient predicate for Plaintiff's claims for unfair business practices.

65.     Defendant knew or should have known of the defects as described herein.

66.     Defendant committed fraudulent business practices by engaging in conduct, as alleged herein, that was and is likely to deceive consumers acting reasonably under the circumstances.   Defendant's fraudulent practices include but are not limited to failing to adequately disclose and/or concealing from Plaintiff and Class members that Vehicles were equipped with AHR systems that were manufactured with defective materials and that this compromised the functionality and safety of the Vehicles.

67.     Defendant violated the UCL when it failed to disclose the fact that the Class Vehicles pose safety risks and were defective as described herein when they had a duty to disclose the safety risks and materials defects to consumers and instead falsely represented that the Class Vehicles were safe for consumer use.

68.     Plaintiff and the Class members have suffered injury in fact and have lost money and property as a result of Defendant's unlawful, unfair, or fraudulent practices, in that, among other things:

a. Plaintiff and Class members would not have paid for the subject Vehicles or would have paid substantially less had they known the Vehicles contained such materials defects;

b. Plaintiff and Class members have been deprived of making an informed decision about the Vehicles they have purchased or leased; and

c. Plaintiff and Class members have incurred out-of-pocket expenses to repair defective AHR systems.

69. The above-described unfair, unlawful and fraudulent business practices conducted by Defendant present a threat and likelihood of harm and deception to members of the Class and the public in that Defendant has systematically perpetrated and continues to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

70. Pursuant to Business and Professions Code sections 17200 and 17203, Plaintiff, on behalf of himself and the Class, seeks an order enjoining Defendant from continuing to engage in unlawful, unfair or fraudulent business practices, and other acts prohibited by law.  Plaintiff also seeks an order providing restitution and other appropriate injunctive relief.

## THIRD CLAIM FOR RELIEF
### (Breach of Implied Warranty of Merchantability under the Song-Beverly Act, Cal. Civ. Code §§ 1792, 1791.1, and 1794, *et seq*.)

71. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

72. Under California's Song-Beverly Consumer Warranty Act, California Civil Code section 1792, *et seq*., every sale of consumer goods is accompanied by both a "manufacturer's and retailer's" implied warranty that the goods are merchantable within the meaning of California Civil Code section 1791.1(a).  Therefore, consumers need not be in privity with the manufacturer to bring an implied warranty claim.

73. The Class Vehicles are "consumer goods" within the meaning of California Civil Code section 1791(a).

74. Defendant is a "manufacturer" within the meaning of California Civil Code section

-24-

1791(j).

75.     Plaintiff bought the Class Vehicle in the State of California.

76.     At the time of sale, and currently, Defendant is in the business of manufacturing, marketing, and selling the Class Vehicles.

77.     Defendant provided Plaintiff and Class members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold or leased.  However, the Class Vehicles are not fit for their ordinary purpose of providing reliable, safe transportation because, *inter alia*, the Class Vehicles pose a safety risk and are not fit for their particular purpose of providing safe and reliable transportation.

78.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, *inter alia*, a warranty that the Class Vehicles and the AHR systems within those vehicles were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation; and a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

79.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the materials defect in the AHR system.

80.     The materials defect in the Class Vehicles exists at the point of sale, without warning to Class members, and causes the Class Vehicles to be unsafe and unfit for their ordinary purpose.

81.     Plaintiff and Class members' Vehicles were not adequately labeled nor did Defendant provide adequate notice to the Class members of the defect in the Class Vehicles.

82.     Plaintiff and Class members were intended third-party beneficiaries of the contracts for sale of the Class Vehicles from Defendant to the dealerships who ultimately sold the Class Vehicles to Plaintiff and Class members.  Defendant, who manufactures and markets the Class Vehicles, knew that Plaintiff and Class members were the end-users of the Class Vehicles,

-25-

and brought itself into privity with Plaintiff and Class members who relied upon written representations and advertisements made by Defendant as alleged herein.

83.    As a direct and proximate cause of Defendant's breach of implied warranty, Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Express Warranty, on Behalf of the Breach of Warranty Subclass)**

84.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

85.    As set forth above, the written warranty provided to Plaintiff and the Class specifically provides that Chrysler will cover "the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

86.    As described herein, the Class Vehicles were manufactured with defective material and such defect existed at the time the Vehicles left the manufacturing plant.  Plaintiff and members of the Breach of Warranty Subclass submitted their Vehicles for warranty repairs as referenced herein.  Chrysler failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the subject materials defect under the Vehicle's warranty as described herein.

87.    Chrysler's acts in failing and/or refusing to repair the materials defect during the warranty period so as to bring the Vehicles into conformity with the express warranties, deprived Plaintiff and members of the Breach of Warranty Subclass of their rights guaranteed them under the express warranties offered by Chrysler.

88.    As a direct and proximate result of the willful failure of Chrysler to comply with its obligations under the express warranties, Plaintiff and members of the Breach of Warranty Subclass have suffered actual and consequential damages.  Such damages include, but are not limited to, the cost of repairing the Vehicles, the loss of the use and enjoyment of the subject Vehicle, and a diminution in the value of the Vehicle containing the materials defects identified

-26-

herein.  The precise amount of these damages is unknown at the present time but is in excess of the jurisdictional limits of this Court.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them jointly and severally, as follows:

1.  For an Order certifying this action as a class action;

2.  For an Order appointing Plaintiff as the class representative of the Class and Breach of Warranty Subclass, and appointing counsel undersigned to represent the Class and Subclass;

3.  Payment to the Class and Subclass of damages in an amount to be proven at trial;

4.  For restitution as authorized by law;

5.  For an injunction to prohibit Defendant from engaging in the unfair business practices complained of herein, and for an injunction requiring Defendant to issue corrective actions, including notification and repairs for the Class Vehicles;

6.  For an award of reasonable attorney's fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

7.  For such other interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

8.  For such other and further relief as the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 16, 2018.                    KERSHAW, COOK & TALLEY PC

By:   */s/ William A. Kershaw*
      William A. Kershaw
      *Attorneys for Plaintiff and the putative Class*

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

### DECLARATION OF WILLIAM A. KERSHAW
### PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)

3    I, William A. Kershaw, declare as follows:

4        1.      I submit this declaration pursuant to section 1780(d) of the California Consumers

5    Legal Remedies Act.  I have personal knowledge of the matters set forth below and if called as a

6    witness could and would be competent to testify thereto.

7        2.      Defendant FCA US LLC (formerly known as Chrysler Group LLC) is a Delaware

8    corporation.  Defendant was engaged in the business of sales, marketing, and distribution of its

9    automobiles and motor vehicle components in California, and throughout the United States of

10   America.

11       I declare under the penalty of perjury under the laws of the State of California and the

12   United States that the foregoing is true and correct and that this declaration was executed on

13   February 16, 2018 in Sacramento, California.

14

15                                    */s/ William A. Kershaw*
                                       WILLIAM A. KERSHAW

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT