Williams A. Kershaw, State Bar No. 057486
Stuart C. Talley, State Bar No. 180374
Ian J. Barlow, State Bar No. 262213
KERSHAW, COOK & TALLEY PC
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 779-7000
Facsimile: (916) 721-2501
Email: bill@kctlegal.com
Email: stuart@kctlegal.com
Email: ian@kctlegal.com

Mark P. Chalos (*pro hac vice*)
Kenneth S. Byrd (*pro hac vice*)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
222 Second Avenue South, Suite 1640
Nashville, Tennessee 37201
Telephone: (615) 313-9000
Email: mchalos@lchb.com
Email: kbyrd@lchb.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ALGER, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC f/k/a CHRYSLER GROUP LLC, a Delaware Corporation, and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No. 2:18-CV-00360-MCE-EFB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**<br><br>Judge: Hon. Morrison C. England, Jr. |

This matter comes before the Court on Plaintiff's Motion for Class Certification and Appointment of Class Representative and Class Counsel, (ECF No. 54, "Plaintiff's Motion") and Defendant's Motion to Stay (ECF No. 114) (Defendant's Motion).

The Court has reviewed the briefing and record with respect to Defendant's Motion and concludes that no stay is warranted. Accordingly, Defendant's Motion to Stay is DENIED.

For his part, Plaintiff moves for certification of two classes of owners and lessees of certain Chrysler vehicles that contain allegedly defective spring-loaded headrests that suddenly and violently deploy, potentially striking the driver and/or passenger in the back of the head ("Unintended Deployment"). Having reviewed all the briefing and responses filed with respect to Plaintiff's Motion, and other materials submitted therewith, the Court finds and further rules as follows:

**BACKGROUND**

The Defendant, FCA US LLC (referred to herein as "Chrysler"), sells millions of vehicles throughout the United States. Beginning in 2010, Chrysler began equipping some of its vehicles with a purported safety device known as an Active Head Restraint System ("AHR System"). Chrysler has sold or leased approximately 279,000 vehicles with an AHR System in California. An AHR System is a mechanism built into the vehicles' front headrests that allows the headrests to "deploy" in the event of a rear-end collision. The AHR System works by splitting the headrest into two sections; the padded front and the back. In between the front and back of the headrests are two powerful springs. Much like a mouse trap, the spring-loaded headrests stay in place through the use of a hook that latches to a metal "striker pin." When the sensors in the vehicle detect a rear-end collision, the hook releases the pin and the spring-loaded headrest launches forward. If the AHR System works properly, it is intended to reduce the risk of whiplash in the event of a rear-end collision. Plaintiff alleges that, for many Chrysler owners, the AHR Systems do not work as intended; instead, the headrests unexpectedly deploy without warning while the vehicle is in normal operation and not in the midst of a crash. Plaintiff contends that the AHR System failures are the result of a common design defect that Chrysler failed to disclose to consumers.

On April 23, 2018, Plaintiff, on behalf of himself and others similarly situated, filed the operative Second Amended Class Action Complaint against Chrysler asserting claims for: (1) violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) breach of implied warranty under California's Song-Beverly Consumer Warranty Act ("Song Beverly Act"), Cal. Civ. Code §§ 1792, 1791.1, and 1794, *et seq.*; and (4) breach of express warranty. ECF No. 13.

Plaintiff seeks an order certifying the following classes pursuant to Rule 23 of the Federal Rules of Civil Procedure:

<u>The Damages Class pursuant to Rule 23(b)(3)</u>[1]

"All persons in California who currently own or lease, or who have owned or leased, any Class Vehicle manufactured by Chrysler or any of its subsidiaries or affiliates that is equipped with an Automatic Head Restraint ("AHR") system."

<u>The Injunctive Class pursuant to Rule 23(b)(2)</u>

"All persons in California who currently own or lease any Class Vehicle manufactured by Chrysler or any of its subsidiaries or affiliates that is equipped with an AHR system."

Class Vehicles comprise the following make-year and model Chrysler Vehicles:

2010-2018 Dodge Journey
2010-2011 Dodge Nitro
2010-2012 Jeep Liberty
2010-2017 Jeep Patriot or Compass
2010-2012 Dodge Caliber
2010-2018 Dodge Caravan
2011-2018 Dodge Durango
2011-2018 Jeep Grand Cherokee
2010-2014 Sebring/Avenger

---

[1] The Court, as set forth in its Conclusion below, will certify the class only as to the economic loss claims set forth in the Second Amended Class Action Complaint (Dkt. 13), and will not certify any personal injury claims or damages. In addition, the Court will exclude from the Class Chrysler, its employees, officers, directors, and legal representatives; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

## LEGAL STANDARD

It is within the court's broad discretion to "determine whether a class should be certified, and to revisit that certification throughout the legal proceedings." *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629, 2019 WL 1940619, at *2 (C.D. Cal. Mar. 27, 2019) (quoting *United Steel, Paper & Forestry, Rubber Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 810 (9th Cir. 2010)).

A case may be certified as a class action if it meets the requirements outlined in Rule 23 of the Federal Rules of Civil Procedure:

    (1) The class is so numerous that joinder of all members is impracticable;

    (2) There are questions of law or fact common to the class;

    (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class;

    (4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Additionally, the proposed class must meet one of three requirements specified in Rule 23(b). *See Salas*, 2019 WL 1940619, at *2. The party seeking class certification has an affirmative duty to demonstrate that the Rule 23 elements are satisfied. *Id.*

The court is tasked with conducting a "rigorous" analysis before granting or denying class certification. This analysis may "entail some overlap with the merits of the plaintiff's underlying claim[,]" and the court may find it necessary to, at times, "probe behind the pleadings[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). But, even so, "merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites . . . are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). Rule 23 does *not* permit a "free-ranging merits inquir[y] . . . at the certification stage." *Id.*; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (explaining that a district court's examination of the merits should take place "only inasmuch as [the court] must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims."). Class certification should not become a "mini-trial." *Ellis*, 657 F.3d at 983 n.8; *see also Salas*, 2019 WL 1940619,

at *2.

Having conducted a rigorous analysis, including consideration of all evidence submitted in favor of and in opposition to the motion, the Court finds that the class, including the Class Vehicles listed above, satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Court turns to each of these requirements in turn.

## DISCUSSION

**Numerosity.** Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Although "no specific minimum number of plaintiffs asserted" is required to obtain class certification, "a proposed class of at least forty members presumptively satisfies the numerosity requirement." *Nguyen v. Radient Pharmaceutical Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012). Plaintiff's purported class far exceeds forty members. He has shown that, within California, Chrysler has sold or leased approximately 279,000 Class Vehicles, of various models and years, equipped with an AHR System. Even if the Court determined, which it does not, that Chrysler is correct that "only a tiny percentage of these vehicles might" have defective AHR Systems, the class would still easily satisfy the requirements of Rule 23(a)(1).[2]

**Commonality**. Plaintiff also satisfies Rule 23(a)(2), which requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The focus of this inquiry is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (italics and citation omitted). Put another way, a class achieves commonality if "an issue that is central to the validity of each one of the claims" is "capable of classwide resolution." *Id.* A plaintiff need not show commonality across a class with regard to all questions of law or fact. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013); *see also Falco v. Nissan North America Inc.*, No. CV 13-00686 DDP, 2016 WL 132747, at *4 (C.D. Cal. Apr. 5, 2016). Rather, a plaintiff meets the requirements of Rule 23(a)(2) by showing that the class has in common "a single *significant* issue of law or fact."

---

[2] Indeed, Defendant expressly concedes that the numerosity requirement is met here. See Def's Opp., ECF No. 66, at 11

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION   NO. 2:18-CV-00360-MCE-EFB

*Abdullah*, 731 F.3d at 957 (internal quotation marks omitted).

Plaintiff points to a number of instances in which courts granted class certification when faced with similar claims. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005); *Falco*, 2016 WL 132747, at *5; *Salas*, 2019 WL 1940619, at *5-10. That standard is "easily" met in cases indistinguishable from the case here: where "claims of all prospective class members involve the same alleged defect, covered by the same warranty, and found in vehicles of the same make and model." *Wolin*, 617 F.3d at 1172; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998) (finding commonality satisfied where claims "stem[med] from the same source: the allegedly defective designed rear liftgate latch"); *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 540 (9th Cir. 2015) (finding that "whether a defect existed and whether Ford had a duty to disclose the defect were both questions common to the class"); *Chamberlan*, 402 F.3d at 962 (finding that "whether the [vehicle] design . . . was defective," "whether [defendant] was aware of alleged design defects," and "whether [defendant] had a duty to disclose" were common questions).

Plaintiff identifies multiple significant common issues of law and fact. Principally, a common question exists as to whether Class Vehicles suffered from a defective AHR System design. Chrysler argues that any alleged defect was a manufacturing error, not a design one, and that the presence of the defect-generating agent varied among the Class Vehicles. Plaintiff replies that the evidence establishes that the AHR System design, materials, and alleged defect are uniform across the class. In support of these claims, Plaintiff proffered several experts, as well as pre-litigation documents from Chrysler and its supplier. Having reviewed the expert opinions proffered by both parties, the deposition transcripts cited, and the documentary evidence, the Court finds that the central questions in this case involving a defective AHR System can be resolved by common questions submitted to a jury.[3]

---

[3] This case is somewhat unique in that the purported defect is latent and a class member cannot know if his or her car is affected without spending a disproportionate amount to have the headrests removed and checked. Given the inability to predict when a particular headrest might deploy, all class members are to some extent already suffering from the defect of uncertainty;

*Footnote continued on next page*

In particular, Plaintiff's expert Bruce Davis, Ph.D., opined that the design in the AHR System in Class Vehicles is identical from an engineering standpoint. Dr. Davis, who has a Ph.D. in Mechanical Engineering specializing in polymer processing, behavior, and analysis, also opined extensively on the defect in the plastic material and pins used by the design of the AHR System and how the AHR System is susceptible to a common defect that can lead to failures. (ECF No. 54-3.) The Court finds his opinions credible in so far as this stage of litigation requires: determining whether common questions exist and predominate. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("There is a single, central, common issue of liability: whether the [product] was defective.").

Chrysler contends that commonality is lacking principally for two reasons.

*First*, Chrysler argues that there are *no* common questions because the failure rates are low and vary across vehicle models. But in that respect this case is on all fours with decisions from the Ninth Circuit and other district courts in the Circuit. In *Wolin*, for example, the Ninth Circuit ruled that plaintiffs "easily" satisfied the commonality requirement because they identified the following common issues: (a) whether the vehicle's alignment geometry was defective; (b) whether the defendant was aware of the defect; (c) whether the defendant concealed the defect; and (d) whether that conduct violated consumer protection laws. *See Wolin*, 617 F.3d at 1172. The defendant argued that class certification was nevertheless inappropriate because the defect would manifest irregularly or not at all. *See id.* at 1173. The Ninth Circuit disagreed, explaining that "proof of the manifestation of a defect is not a prerequisite to class certification." *Id.*

*Second*, Chrysler takes issue with the fact that a handful of 2010 vehicles tested may not have been defective. The Court finds that for certification purposes the evidence shows that the same AHR System design and materials were used in model year 2010 vehicles as were used in all other Class Vehicles. Additionally, the 2010 vehicles were manufactured in the same facility by the same third-party vendor as other model year vehicles. Thus, there remains a common question as to the presence of a design defect in these vehicles.

---

stated another way, the unknown potential for a deployment may be the actual defect that is certainly present for every Class Vehicle.

The core of Plaintiff's case is that the design of the AHR Systems in Class Vehicles is defective, Chrysler knew (or should have known) about the defect, and Chrysler failed to disclose material information. As such, there are similar common questions that can be identified, such as: (a) whether the AHR System is defective; (b) whether Chrysler was aware of the defect; (c) whether Chrysler concealed or omitted information about the defect; (d) whether the defect constitutes a safety risk; (e) whether the defect rendered the Class Vehicles unmerchantable; and (f) whether Chrysler's conduct was unlawful and amounted to violation of the CLRA and UCL.[4] *See Salas*, 2019 WL 1940619, at *5 (finding several questions of fact and law that are common to the class, including "whether a defect exists in the Toyota Camry XV 50, whether Toyota knew about it, whether Toyota concealed the defect, whether Toyota violated consumer protection statutes as a result, and whether the alleged defect rendered [the vehicle] unmerchantable").

Plaintiff has satisfied the commonality prong.

**Typicality.** Plaintiff's claims are "reasonably coextensive with those of absent class members," and therefore satisfy the Rule 23(a)(3) requirement. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)). Plaintiff alleges that the headrest in his 2015 Jeep Grand Cherokee unexpectedly deployed while he was driving his vehicle. He alleges that the deployment startled and distracted him, causing a safety hazard, and injured him. He further claims that the deployment was the result of a design defect that affects all of the Class Vehicles. Finally, Plaintiff claims that although the deployment took place while his car was under warranty, he was forced to pay out-of-pocket for a new headrest that allegedly suffered from the same defect.

Chrysler argues that Plaintiff's claims are atypical because the projected failure rate of his vehicle differs from that of other Class Vehicles. But, as explained with respect to commonality, variations in manifestation are no bar to class certification. And, in any event, the precise details of a claim need not be identical across the class; it is enough that they are similar. *See, e.g.,*

---

[4] Plaintiff concedes that for the CLRA claim, a subclass should be created consisting of all members of the California class who are "consumers" within the meaning of California Civil Code § 1761(d). This Court agrees and notes that Plaintiff Alger is a "consumer" within the meaning of the code. (Def.'s Reply, ECF No. 69, at 11-12.)

*Wolin*, 617 F.3d at 1175 ("Typicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect. [Plaintiffs] . . . may have a viable claim regardless of the manifestation of the defect."). Plaintiff's claims and those of other proposed class members are based on the same core facts—the alleged presence of the defective AHR System and Chrysler's concealment of the defect—as well as similar injuries, and he proceeds on the same legal theory as other class members' claims. Typicality is met because the legal interests "are the same across all potential class members." *Falco*, 2016 WL 132747, at *7.

**Adequacy.** Rule 23(a)(4) questions whether the named plaintiff and his counsel have "any conflicts of interest with other Class Members" and whether he and his counsel "will prosecute the action vigorously on behalf of the class." The Court finds that Plaintiff will adequately represent the interests of the class and will vigorously prosecute the claims, notwithstanding his decision to forego potential personal injury claims. *See, e.g.*, *Andren v. Alere, Inc.*, No. 16-cv-1255, 2017 WL 6509550, at *8 (S.D. Cal. Dec. 20, 2017) (explaining that "any risk of preclusion can be mitigated through the opt-out provisions" and "Courts can also expressly reserve the plaintiff's right to maintain a second action"); *cf. Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457, 473 (N.D. Cal. 2016) (finding adequacy satisfied even where, unlike here, the named plaintiff "additionally [brought] individual claims" on behalf of himself "where there is no evidence that the individual claims will impair his ability to represent the interests of the class.").

Out of an abundance of caution, the Court, as set forth in its Conclusion below, will certify the class only as to the economic loss claims set forth in the Second Amended Class Action Complaint (ECF No. 13), and will not certify any personal injury claims or damages.

Finally, all counsel for Plaintiff are experienced, qualified, and fully capable of representing the interests of the class. (ECF No. 54 at p. 21; Talley Decl. ¶ 21 and Ex. T; *see* Byrd Decl. ¶¶ 7-20.) Adequacy is satisfied here.

**Predominance.** Plaintiff satisfies the predominance inquiry, which "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 594 (1997); *see also Tait v. BSH Home*

*Appliances Corp.*, 289 F.R.D. 466, 478 (C.D. Cal. 2012). Though there is "substantial overlap" between the commonality and predominance test, the predominance test is "far more demanding." *Wolin*, 617 F.3d at 1172. The predominance analysis "asks whether the common, aggregating-enabling, issues in the case are more prevalent or important than non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). This standard is "readily met" in consumer fraud cases. *Tait*, 289 F.R.D. at 478 (quoting *Amchem*, 521 U.S. at 625).

As explained in the Court's discussion of commonality above, the central issues in this case turn on Chrysler's uniform conduct and the questions key to Plaintiff's claims will be answered by reference to the same set of facts. *See Wolin*, 617 F.3d at 1173 (finding that common issues predominated where Land Rover knew about the existence of an alleged defect and plaintiff sought relief on a duty-to-disclose theory); *see also Chamberlan*, 402 F.3d at 962; *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596 (C.D. Cal. 2008). The Court now addresses predominance with respect to each claim at issue in turn.

### UCL and CLRA Claims

Courts regularly find predominance satisfied and certify UCL and CLRA class claims. *See, e.g.*, *Salas*, 2019 WL 1940619, at *13-14; *Tait*, 289 F.R.D. at 480; *Keegan*, 284 F.R.D. at 532-34. The UCL prohibits "unfair competition," which is broadly defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The CLRA forbids certain "unfair methods of competition and unfair or deceptive acts or practices" in the sale or lease of goods to consumers for personal or household use. Cal. Civ. Code § 1770(a). In considering UCL and CLRA claims, courts rely on "the same objective test, that is, whether 'members of the public are likely to be deceived.'" *Tait*, 289 F.R.D. at 480.

This test does not require an individual showing of deception, reliance, or injury under the UCL because "unlike common-law fraud claims that focus on the victim's reliance or damages, the UCL focuses on the perpetrator's behavior[.]" *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct.

-10-

1702 (2017). Instead, "a violation of the UCL can be proved with common evidence regarding the nature of the design defect in question, the likely effect of the defect on class vehicles, its likely impact on vehicle safety, what [Defendant] knew or did not know, and what it disclosed or did not disclose to consumers." *Keegan*, 284 F.R.D. at 534. Furthermore, a plaintiff need not demonstrate individual reliance; a presumption or inference of reliance arises as to the entire class "wherever there is a showing that a misrepresentation was material." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) (citation omitted); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010).

Here, Plaintiff will be able to establish through common evidence a violation of the UCL's fraudulent prong by showing the uniformity of the defective AHR System, the effect on the class, the defect's impact on safety, what Chrysler knew and disclosed, and what Chrysler knew and did not disclose. *See Keegan*, 284 F.R.D. at 534. These questions predominate over any individual concerns related to Plaintiff's UCL claim.

Similarly, Plaintiff's claim regarding the UCL's unfairness prong is predominated by common questions. That prong requires showing a violation of "established public policy" or business practices that are "immoral, unethical, oppressive or unscrupulous and cause injury to consumers, which outweigh its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Plaintiff will be able to show a violation of this prong with common evidence, because the claims all stem from the same uniform defect that creates similar safety risks across all Class Vehicles and the same conduct of Chrysler related to the defect and customers of Class Vehicles. *See Keegan*, 284 F.R.D. at 533 ("all class members received the same information from defendant[] regarding the purported defect – which is to say, no information[.]"; *see also Parkinson*, 258 F.R.D. at 596 (predominance satisfied as to all three UCL prongs in case involving defectively designed and uniformly used clutch flywheel); *see also Salas*, 2019 WL 1940619, at *13-14 (predominance satisfied as to UCL and CLRA claims involving defect with vehicle HVAC system leading to foul odors and potential mold). Plaintiff has put forth experts who opined that the Unintended Deployment of the AHR Systems pose great risks to consumers. Experts have found that the AHR defect can cause injuries, such as concussions, and can cause

drivers to be distracted, potentially leading to wrecks and creating a safety risk.  ECF No. 54-4.
Finally, Plaintiff has produced credible evidence that Chrysler's uniform practice of refusing to
cover the cost of an AHR repair outside of the warranty period, creates a potential safety risk
since many consumers who cannot afford a repair may remove their headrests, drive with it
deployed, or strap it shut.  Hence, the question of whether the Unintended Deployments create a
safety risk is a common one that can be answered in one stroke by a jury.  *See Wolin*, 617 F.3d at
1172.

   To establish that Chrysler has engaged in an "unlawful" act or practice, Plaintiff must
show an underlying violation of another law.  *Keegan*, 284 F.R.D. at 533.  Here, Plaintiff
predicates his UCL unlawful act claim on violations of the CLRA and the breach of implied
warranty under the Song-Beverly Warranty Act.  Thus, predominance is satisfied with respect to
the UCL for the same reasons it is satisfied for those claims.

   For similar reasons, Plaintiff satisfies predominance with respect to his CLRA claim.
Among the deceptive acts and practices prohibited by the CLRA are:  (i) representing that goods
(i.e. Vehicles) have characteristics or benefits, which they do not have (section 1770(a)(5)); (ii)
representing that goods are of a particular standard, quality, or grade, when they are of another
(section 1770(a)(7)); and (iii) advertising goods with the intent not to sell them as advertised
(section 1770 (a)(9)).  And, like the UCL, the CLRA prohibits fraudulent omissions.  *See Salas*,
2019 WL 1940619, at *7; *see also Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th
824, 833 (2006).

   For a CLRA claim, Plaintiff has to show that Chrysler had a duty to disclose an alleged
defect because Defendant had exclusive knowledge of "material facts."  *Collins v. eMachines,
Inc.*, 202 Cal. App. 4th 249, 255-56 (2011).  This duty is not limited by an express warranty if the
nondisclosure creates an "unreasonable safety risk."  *See, e.g.*, *In re Toyota Motor Corp.*, 754 F.
Supp. 2d 1145, 1191 n.25 (C.D. Cal. 2010) ("[t]he risk of injury … is the type of 'unreasonable
risk' that leads to a duty to disclose under California law").  A CLRA claim also "requires each
class member to have an actual injury caused by the unlawful practice."  *Keegan*, 284 F.R.D. at
529.  Also like the UCL, however, causation on a class-wide basis "may be established by

materiality." *Id.* An omission is material if "a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* Because materiality is determined according to a reasonable person standard, the question of whether the omitted information is material is a common question of fact suitable for treatment in a class action. *See id.* at 530-31; *Chamberlan*, 402 F.3d at 956 (identifying as a common, predominant issue "whether the facts that [Defendant] allegedly failed to disclose were material."); *see also Tait*, 289 F.R.D. at 480 ("claims under the UCL, … and CLRA [are] ideal for class certification because they will not require the court to investigate class members' individual interaction with the product").

As to the safety issue related to the UCL and CLRA, Plaintiff proffered opinions from expert, Dr. Francisco Biondi, a professor of Applied Cognition and Cognitive Ergonomics, who stated that a noisy, forceful Unexpected Deployment of an AHR System can lead to driver distraction. ECF No. 54-4. Dr. Biondi, who has conducted extensive research in the area of distracted driving, has reviewed scores of complaints from consumers who have reported inadvertent headrest deployments and has concluded that an Unexpected Deployment can result in driver distraction that could lead to a vehicle accident.[5]

In addition, Dr. Mariusz Ziejewski, a biomechanical engineer who has published numerous studies concerning the dynamics of head injuries, conducted testing on behalf of Plaintiff by deploying headrests against a crash test dummy. Talley Decl. ISO Reply, ECF No. 69, Ex. Y. Dr. Ziejewski tested more than 140 combinations to identify positions that were most likely to cause injury. *Id.* Based on his testing, Dr. Ziejewski concluded that "an inadvertently deployed headrest has the potential to cause a mild traumatic brain injury in certain individuals." *Id.*

Because Plaintiff contends the common defect poses a safety risk (itself a common question), Chrysler is incorrect that the individual questions of whether Chrysler's alleged omissions were material and whether class members relied on Chrysler's representations

---

[5] The Court notes that this conclusion is also supported by common sense. Having a headrest unexpectedly deploy while operating a motor vehicle would undoubtedly cause a great distraction with the potential to lead to catastrophic results.

ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION    NO. 2:18-CV-00360-MCE-EFB

predominates and precludes class certification.

Chrysler's contention that individual inquiries are required to determine when each class member became aware of the AHR System defect also fails. Plaintiff puts forth a theory of liability premised on Chrysler's omissions. In such an instance, individual questions about "when class members actually discovered or 'should have discovered' the elements of their claims do not predominate." *Tait*, 289 F.R.D. at 485. Because "common proof includes Defendant's failure to inform consumers of the design defect," the question of whether Chrysler knew about and failed to disclose the defect predominates Plaintiff's CLRA and UCL claims. *Id.* at 485-86; *see also Chamberlan*, 402 F.3d at 962 (holding in a CLRA claim that predominant common issues existed as to "whether [defendant] was aware of alleged design defects" and "whether [defendant] had a duty to disclose its knowledge.").

Here, as in *Chamberlan*, the predominance of common issues is "readily apparent." 402 F.3d at 962 (affirming class certification where district court identified such common issues as "(1) whether the design . . . was defective; (2) whether Ford was aware of the alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (3) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA."). Common proof can establish the elements of the CLRA claim, such as whether Chrysler had a duty to disclose the defect in the AHR System, whether there was an unreasonable safety risk, and whether consumers would find such an omission material in their transactions.

**Breach of Implied Warranty Claims**

The Song-Beverly Act provides that "every sale of consumer goods that are sold at retail in [California] shall be accompanied by the manufacturer's and retail seller's implied warranty that goods are merchantable," Cal. Civ. Code section 1792, which means here that goods are "fit for the ordinary purpose for which such goods are used." *Id.* § 1791.1(a)(2). For vehicles, the question "is whether the vehicle is fit for driving." *Keegan*, 284 F.R.D. at 537. The warranty of merchantability is met if the vehicle is "in safe condition and substantially free of defects." *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 25 (2007). "The implied warranty of

merchantability may be breached by a latent defect undiscoverable at the time of the sale." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304-5 (2009).

Here, all Class Vehicles were sold with the same latent defect and the same likelihood of the AHR System experiencing an Unintended Deployment and the safety risks that come with such deployment. This can be shown by common evidence. Moreover, the Unintended Deployments and cracking of the headrests are more likely to occur as time progresses. That some Class Vehicles have not yet experienced problems associated with the AHR System is insufficient to defeat predominance on this and the other claims brought by the class. *See Wolin*, 617 F.3d at 1773 ("proof of the manifestation of the defect is not a prerequisite to class certification."). The court in *Keegan* illustrated how the manifestation of the defect was a "merits inquiry" that was particularly suited to resolution as a class action." *See* 284 F.R.D. at 536. In this case, the manifestation of the defect is also a merits inquiry that is particularly suited to be determined on a class basis. *See id.*

### Breach of Express Warranty

Predominance is satisfied under the breach of express warranty claims. To prove breach of express warranty under the U.C.C., Plaintiff must show that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 949 (2012) (citation omitted). Here, Chrysler furnished class members with a standard warranty that "covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. . . . You pay nothing for these repairs. These warranty repairs or adjustments – including all parts and labor connected with them – will be made by your dealer at no charge, using new or remanufactured parts." Docket 54-1 at p. 28.

Plaintiff's claim is that Chrysler breached this warranty by replacing failed headrests with not-yet-failed, but still defective headrests, and that Chrysler is obligated to provide all current owners replacement, defect-free headrests.

The core liability question is common to all proposed class members: whether the Class Vehicles are defective such that Chrysler's replacements did not render the Vehicles non-defective. Every liability element is common. First, the terms of the standard warranty do not vary materially, if at all, among class members. Second, the promise-to-repair, the core of any warranty, either was or was not part of the basis of the bargain for all class members. Third, every class member has an identical claim for breach—they are entitled to replacement of their defective headrests with non-defective headrests. And fourth, every Class Vehicle contains defective headrests and so every class member has been injured by the breach.

Not all class members received deficient replacement headrests under the warranty, and so some class members, but not all, have out-of-pocket costs recoverable upon proving the merits of their express warranty claims. But this slight variation in damages is no bar to class certification. Indeed, the Supreme Court and Ninth Circuit have each held expressly that even when *all* damages require individual hearings (unlike in this case), it does not defeat class certification. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

**Damages Model**

When moving for class certification, a plaintiff seeking to prove damages on a classwide basis "need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability." *Just Film, Inc.*, 847 F.3d at 1121; *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Plaintiff's damages model need not be perfect and it need not be "precisely correct." *See Vaccarino v. Midland Nat'l Life Ins. Co.*, No. 2:11-CV-05858, 2014 WL 572365, at *10-13 (C.D. Cal. Feb. 3, 2014) ("Comcast requires that courts determine whether damages are susceptible of class-wide measurement, not whether the measurement is precisely correct.")

Here, Plaintiff's proffered expert, Susan Thompson, C.P.A., a certified public accountant who has opined on similar damage models for classes that have been certified in similar cases, *see Salas,* 2019 WL 1940619, at *11, developed a damages model that provides a reliable and generally accepted methodology for determining reasonable damages on a classwide basis. ECF No. 54-5. Specifically, she opines that in order for each class member to receive the "benefit of

-16-

their bargain" they should receive sufficient compensation to allow them to remediate the defect. Significantly, the evidence shows that defective headrests cannot be "repaired," but instead both headrests in each vehicle must be replaced to remove the risk of a dangerous failure, and Ms. Thompson calculates damages accordingly. Should the fact finder determine that the original AHR System had some value even in a defective state, Ms. Thompson also has a damages model that will account for that scenario. *See* ECF No. 54-5 (Thompson Report) ¶ 26 ("Plaintiffs believe the defective AHRs, as originally sold, should not be attributed value under the benefit of the bargain model. However, if the finder of fact concludes that the original AHR had some value, [Thompson] has prepared a classwide methodology to account for the 'useful life' of the AHRs. This methodology could also be applied to Plaintiffs who have incurred out-of-pocket expenses to take into account the value, if any, of the defective part that was replaced.").

Chrysler contends that Plaintiff has not met the requirements for class certification because Plaintiff's theory of damages is unsatisfactory. But Chrysler's arguments here have been entirely rejected by the Ninth Circuit in reversing the central case Chrysler relied upon in its brief. *See Nguyen v. Nissan North Am. Inc.*, 932 F.3d 811 (9th Cir. July 26, 2019). In that case, plaintiff alleged a defect hidden in the vehicle's hydraulic clutch system. *Id.* at 813. The district court denied plaintiff's motion for class certification, asserting predominance was not satisfied due to an improper damages model that was based on the cost to replace the defective clutch with a non-defective clutch. *See id.* at 815-16. Ms. Thompson's damages model is parallel to the model in *Nguyen*. The Ninth Circuit reversed the district court shortly after Defendant filed its opposition in this case, and instead found that the class should be certified on the CLRA, Song-Beverly Act, and Magnuson-Moss Act claims. The Ninth Circuit ruled, in part:

> Plaintiff alleges that Nissan concealed the clutch system's defects from consumers, that the defect was material because it adversely affected the "safety and reliability" of the Class Vehicles, and that he did not get what he bargained for—a transmission "fit for [its] intended use." A benefit-of-the-bargain model of damages aligns with this legal theory; that measure
>
> > is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him in the position he would have enjoyed if the false representation relied upon had been true; it awards the

difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive.

*Stout v. Turney*, 22 Cal.3d 718, 150 Cal.Rptr. 637, 586 P.2d 1228, 1232 (1978). Plaintiff seeks to recover damages equaling the amount he purportedly overpaid in purchasing a vehicle with a defective clutch; he "is not seeking a full refund for the vehicle purchase, but for the cost of replacing [ ] a defective component, which is a proxy for [his] overpayment of the vehicle at the point of sale." Whether his proposed calculation of the replacement cost is accurate, whether the clutch was actually defective, and whether Nissan knew of the alleged defect are merits inquiries unrelated to class certification. For now, it is sufficient that Plaintiff has demonstrated the nexus between his legal theory—that Nissan violated California law by selling vehicles with a defective clutch system that was not reflected in the sale price—and his damages model—the average cost of repair.

*See id.* at 821. The *Nguyen* Court also noted that "class wide damages calculations under the . . . CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result is an approximation.'" *Id.* at 818.

Ms. Thompson's damages model is similar to the model in *Nguyen*. Moreover, as Ms. Thompson testified in her deposition, her calculations can be readily adjusted once the appropriate repair costs and time are obtained from Chrysler and related third-parties. Here, as there, whether the proposed calculation is accurate, whether the AHR was actually defective and whether Defendant knew of the defect "are merits inquiries unrelated to class certification." *Id.* at 821. For now, Plaintiff has sufficiently established a nexus between his theories of liability and his damages model. Rule 23(b)(3)'s predominance requirement is satisfied.

### Statute of Limitations Concerns

Chrysler's theory that statutes of limitations prevent class certification also fails. Adjudication of individualized affirmative defenses typically does not defeat predominance under Rule 23(b)(3) because "[t]he Court has various tools at its disposal to manage resolution of those issues to the extent that they arise." *In re Myford Touch Consumer Litigation*, No. 13-cv-03072, 2018 WL 3646895, at *2 (N.D. Cal. Aug. 1, 2018). Even if statute-of-limitations questions must be addressed individually - and Defendant has not provided evidence establishing that they must be - common questions, including the presence of a defect and Chrysler's knowledge of and failure to disclose the defect, remain central to the issues in this case.

Predominance is not defeated because the doctrines used by Plaintiff for "tolling the statute of limitations," such as the doctrine of fraudulent concealment, involve proof "common to the defendants," namely, "the act of concealing" defendant's wrong. *See Tait*, 289 F.R.D. at 485. (citing *In re Linerboard Antitrust Litigation*, 305 F.3d 145, 163 (3d Cir. 2002). Indeed, "[c]ourts have been nearly unanimous ... in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action." *Id.* (quoting *Schramm v. JPMorgan Chase Bank, N.A., LA* CV09–09442 JAK, 2011 WL 5034663, *11-12 (C.D. Cal. Oct. 19, 2011) (holding that statute of limitations defense did not result in individual inquiries about when class members had actual or inquiry notice of their claims and noting that defendant's "speculation that some class members' claims may be barred on the basis of actual knowledge is not sufficient to defeat certification").

For all the reasons set forth above, the predominance requirement is met.

**Superiority.** Plaintiff meets the superiority requirement of Rule 23(b)(3) because, among other reasons, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin*, 617 F.3d at 1175. In this case, each class member is entitled to recover only a small amount of money—potentially less than $800—while litigation costs for each individual class member would be substantial, especially given the need for expert analysis. Given this fact, class members are unlikely to pursue individual actions. Moreover, the array of common questions and legal theories here renders adjudication in a single action both effective and efficient. And while Chrysler has identified some issues that affect some class members but not others, such as statutes of limitations or whether Chrysler sufficiently fixed the defect after 2017, such issues do not make class certification inappropriate. These issues are insignificant relative to the central, common questions that will drive resolution of class members' claims. Nor does the need to resolve such questions present intractable manageability problems. Thus, there are not any significant manageability issues here. *See id.* at 1175-76 (discussing the factors outlined in Rule 23(b)(3)(A-D) as they apply to a case raising a common issue of design defect and misrepresentation).

**Rule 23(b)(2) class**. Plaintiff also seeks to certify a class under Fed. R. Civ. P. 23 (b)(2)

for injunctive relief as a remedy on the class's express warranty claims. Because the certified 23(b)(3) class may seek injunctive relief, the Court does not certify a separate 23(b)(2) class at this time. *See Salas*, 2019 WL 1940619, at *14 ("Under the circumstances here, it is unnecessary for the court to address whether certification under Rule 23(b)(2) is appropriate here since the court is certifying a class under Rule 23(b)(3).").

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Stay (ECF No. 114) and GRANTS Plaintiff's Motion for Class Certification and Appointment of Class Representative and Counsel (ECF No. 54). The Court orders the following:

1. The Court certifies a Rule 23(b)(3) class and subclass below as to the economic damages claims set forth in the Second Amended Class Action Complaint (ECF No. 13) and will not certify any personal injury claims or damages. The class and subclass are defined as:

   (1) A California Class consisting of all persons in California who currently own or lease, or who have owned or leased any Class Vehicle manufactured by Chrysler, or any of its subsidiaries or affiliates, that is equipped with an Automatic Head Restraint System; (2) a California CLRA Subclass consisting of all members of the California Class who are "consumers" within the meaning of California Civil Code § 1761(d). The Court excludes from the Class and Subclass: Chrysler, its employees, officers, directors, and legal representatives; Class Counsel and their employees; and the judicial officers and their immediate family members and associated Court staff assigned to this case.

2. The Court designates as Class Vehicles the following model and year FCA/Chrysler vehicles: 2010-2018 Dodge Journey; 2010-2011 Dodge Nitro; 2010-2012 Jeep Liberty; 2010-2017 Jeep Patriot or Compass; 2010-2012 Dodge Caliber; 2010-2018 Dodge Caravan; 2011-2018 Dodge Durango; 2011-2018 Jeep Grand Cherokee; and 2010-2014 Sebring/Avenger.

3. The Court hereby appoints Shawn Alger as the representative of the certified Class

-20-

and Subclass.

4. The Court hereby appoints the law firms of Lieff Cabraser Heimann & Bernstein, LLP and Kershaw, Cook and Talley PC as Class Counsel for the Class and Subclass.

5. The Court orders Class Counsel to prepare notice to the Class and Subclass and submit the notice and plan for notice distribution to the Court.

IT IS SO ORDERED.

Dated:  February 18, 2020

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE