UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ALGER, as an individual and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FCA US, LLC, a Delaware Corporation formerly known as Chrysler Group LLC,<br><br>Defendant. | No. 2:18-cv-00360-MCE-JDP<br><br>**MEMORANDUM AND ORDER** |

By way of this action, Plaintiff Shawn Alger ("Plaintiff"), on behalf of himself and a class of similarly situated individuals, seeks relief from Defendant FCA US, LLC, ("Defendant") for violations of California law sustained when Defendant purportedly manufactured and sold vehicles with defective head rests that are alleged to spontaneously propel quickly forward, striking the driver in the back of the head. Among other things, this Court previously certified a class of "[a]ll persons in California who currently own or lease, or who have owned or leased, any Class Vehicle manufactured by [Defendant] or any of its subsidiaries or affiliates that is equipped with an Automatic Head Restraint ('AHR') system." ECF Nos. 141, 152. Presently before the Court are Defendant's Motion to Exclude the Opinions and Testimony of Dr. Francesco Biondi

1

(ECF No. 180), Defendant's Motion to Exclude the Opinions and Testimony of Dr. Mariusz Ziejewski (ECF No. 182), Defendant's Motion for Summary Judgment (ECF No. 184), and Plaintiff's Motion to Amend Scheduling Order (ECF No. 211). For the following reasons, these Motions are all DENIED.

## ANALYSIS[1]

### A. Defendant's Motions to Exclude Expert Testimony

Defendant moves to exclude the testimony of two of Plaintiff's experts, Dr. Francesco Biondi and Dr. Mariusz Ziejewski. According to Defendant, Dr. Biondi's testimony should be excluded because (1) his testimony will not assist the trier of fact, and (2) his opinions are based on insufficient facts and improper methodologies. As to Dr. Ziejewski, Defendant contends, very generally, that (1) Dr. Ziejewski is not qualified to offer medical opinions, and (2) his opinions are not based on a recognized methodology. The Court disagrees.

Federal Rule of Evidence 702 governs "testimony by expert witnesses":

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

This Court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589

---

[1] Because a protective order is in place in this case (ECF No. 139), the Court forgoes reciting the applicable facts here or discussing them in any detail below. The Court and the parties are intimately familiar with the record in this case and the specifics are unnecessary.

2

(1993). This is a "gatekeeping" function that applies to all expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). The objective of this gatekeeping requirement "is to ensure the reliability and relevancy of expert testimony." Id. at 152. "It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Id.

Defendant's challenges to Plaintiff's experts' testimony go to the weight that testimony should be afforded, not to its admissibility. Dr. Biondi's opinions are relevant and meet the legal standard in that they are sufficiently reliable and will be helpful to the jury. Dr. Ziejewski's opinions are based on a reliable mathematical approach, and he will not be offering specific medical opinions on causation. Accordingly, Defendant's disagreements with both experts can be resolved through reliance on its own competing experts and on aggressive cross examination. Both motions to exclude are thus DENIED.

**B.      Defendant's Motion for Summary Judgment**[2]

Defendant next moves for summary judgment on each of Plaintiff's four claims: (1) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. ("CLRA"); (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof.

---

[2] The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

3

Code §§ 17200 et seq. ("UCL"); (3) breach of the implied warranty of merchantability under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 et seq.; and (4) breach of express warranty.  According to Defendant, it is entitled to judgment on Plaintiff's CLRA and UCL claims because Defendant had no knowledge of the alleged defect at the time Plaintiff purchased his vehicle, and the defect does not create any unreasonable safety hazard in any event.  Defendant further contends that Plaintiff's breach of implied warranty claim is fatally flawed because the affected vehicles are fit for their intended purposes.  It then takes the position that all three of those claims are moot because they were cured when Defendant created an extended warranty program guaranteeing that when malfunctions occur, those parts will then be replaced free of charge.  As to the CLRA claim alone, Defendant next contends that the statute of limitations has expired as to any vehicles purchased in 2015 or earlier.  Defendant then argues that Plaintiff's breach of express warranty claim fails because Plaintiff alleges a design defect as opposed to a manufacturing defect.  Finally, Defendant takes the position that class members who have not suffered a deployment lack standing because they cannot show the requisite injury in fact.  These arguments are addressed in turn.

      **1.**      **Triable issues of fact exist as to when Defendant had the requisite knowledge of the purported defect and whether that defect causes an unreasonable safety hazard as required for the CLRA and UCL claims.**

According to Defendant, at the time Plaintiff purchased his vehicle, it had no knowledge of the defect underlying Plaintiff's claims.  Defendant takes the position that it first learned of facts leading it to discover the root cause of the headrest deployment in April 2016, and it did not actually determine what that root cause was until January 2017.  Since Plaintiff purchased his vehicle in 2015, Defendant thus had nothing to disclose to him.  However, Plaintiff has offered evidence to the contrary.  For example, Plaintiff put forth evidence that Defendant had the requisite knowledge that failures relevant to the current claims were occurring before it introduced the headrests into the market.  See Plaintiff's Separate Statement of Additional Undisputed Facts, ECF No. 199-3 ("SAUF"),

Nos. 56–58. Warranty claims pertaining to the headrests also increased in the years prior to Plaintiff's purchase. SAUF Nos. 24–27. Plaintiff has thus proffered evidence that Defendant had actual knowledge there was a problem with its headrests, regardless of whether it then conducted the necessary inquiry to determine precisely what was causing the symptoms of the defect. Having considered the record in its entirety, the Court concludes summary adjudication of this issue would be improper.

Nor is the Court at all inclined to hold as a matter of law that defective headrests do not pose an unreasonable safety hazard. There is ample evidence in the record from which the jury could conclude that the unexpected deployment of headrests could cause immediate injury to a driver, even if that injury is typically minimal. More importantly to this Court, it is almost beyond dispute that a sudden and unanticipated blow to the head while driving could cause distraction, which could in turn, depending on the circumstances, then lead to catastrophic results. This is absolutely a question for a jury.

### 2. Whether the vehicles are fit for their intended purpose should also be decided by a jury.

Defendant contends that Plaintiff's breach of implied warranty cause of action fails because the fact that Plaintiff continued to drive his vehicle shows that the class vehicles are fit for their intended purpose. Having already concluded that a jury could find that the defective headrests pose an unreasonable safety risk, it follows that a jury could also determine the class vehicles were not fit to safely drive. Genuine issues of material fact thus preclude granting Defendant's motion on this issue as well. See Sloan v. Gen. Motors LLC, 287 F. Supp. 3d 840, 879 (N.D. Cal. 2018) ("[W]hether a defect is so severe that the cars at issue could not be said to provide safe, reliable transportation is a question of fact for the jury.") (internal citation and quotation marks omitted).

### 3. Creation of Defendant's extended warranty program does not moot class members' claims.

According to Defendant, its creation of an extended warranty program to provide replacement headrests for those that unexpectedly deploy cures the injuries underlying

5

Plaintiff's CLRA, UCL, and implied warranty claims. This argument ignores the very thrust of Plaintiff's suit. Plaintiff contends that class members whose headrests have not yet deployed are injured by the existence of their ongoing uncertainty and the ever-present potential that actual injury may suddenly occur (i.e., the presence of a potentially ticking time bomb in their headrests that could detonate unexpectedly at any time while driving). Replacing a bomb after it explodes does nothing to rectify the explosion itself. Defendant's argument is rejected.

### 4. Defendant has not shown that it is entitled to summary judgment as to Plaintiff's CLRA claim based on its statute of limitations defense.

Defendant takes the position that class members who purchased vehicles over three years prior to the date this lawsuit was initiated may not recover because their claims are barred by the applicable statute of limitations. However, Defendant again ignores the most basic premise of Plaintiff's claims, which is that the defect alleged here is latent and cannot be discovered until a headrest fails. Accordingly, no statute of limitations can be triggered until such time occurs.[3] See Aryeh v. Canon Bus. Sols., Inc., 55 Cal. 4th 1185, 1192 (2013). Judgment on this ground would be improper.

### 5. Defendant's challenge to Plaintiff's express warranty claim fails because Plaintiff has adequately set forth facts to allege both a design and/or a manufacturing defect.

Defendant seeks judgment on Plaintiff's express warranty claim arguing that it cannot stand because Plaintiff has alleged only a defect in design, which is not covered by his warranty. The Court disagrees. Having read the Second Amended Complaint in its entirety, it finds that Plaintiff intended to pursue relief broadly, including under both design and manufacturing defect theories. Accordingly, the Court declines to enter summary judgment on this point.

///

///

---

[3] To the extent Defendant contends that all class members should be on notice of their potential claims because of the filing of this lawsuit, the Court rejects that contention as unsupported by the record.

6

**6.     Given the potential for a malfunction in this case, Plaintiff has sufficiently shown that all class members suffered injury in fact even if they have not suffered a deployment.**

Finally, Defendant contends that only those class members whose headrests have already inadvertently deployed can show a concrete injury necessary to establish standing. This argument misfires like the rest. The Court has already explained above that class members have shown an injury of uncertainty. That is enough to survive the instant Motion. For all the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED in its entirety.

## C.     Plaintiff's Motion to Amend Scheduling Order

Given the safety risk inherent in the defect alleged here, and facts that have indicatively developed since this case was initiated, Plaintiff filed a Motion to Amend the Court's Scheduling Order seeking to expedite a trial on his claims. Specifically, Plaintiff asked that a trial be set even before the Court ruled on the above Motions. That request is DENIED as moot, and this case will be set for trial along with the numerous other cases that remain to be tried as we emerge from a global pandemic. That said, on the Court's own motion, this matter will be set for a Status Re: Trial Setting.

## CONCLUSION

For the reasons just stated, the following Motions are DENIED: (1) Defendant's Motion to Exclude the Opinions and Testimony of Dr. Francesco Biondi (ECF No. 180); (2) Defendant's Motion to Exclude the Opinions and Testimony of Dr. Mariusz Ziejewski (ECF No. 182); (3) Defendant's Motion for Summary Judgment (ECF No. 184); and (4) Plaintiff's Motion to Amend Scheduling Order (ECF No. 211). This matter is set for a Status Re: Trial Setting on **October 27, 2022, at 2:00 p.m. in courtroom 7**. Counsel are ordered to file a Joint Status Report as set forth above not later than fourteen (14) days before this hearing. The parties are to set forth in their Joint Status Report, the prospect for settlement, their estimated trial length, any request for a jury, and their

7

availability for trial.  To expedite resolution of this matter, the parties are reminded of Local Rule 305(a) and may consent to trial before a magistrate judge.  No additional Joint Notice of Trial Readiness need be filed.

    IT IS SO ORDERED.

Dated:  September 21, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE